463 P.2d 83

**Clifton W. CARUTH and Mary E. Caruth, husband and wife, Appellants,**

**v.**

**John MARIANI and Rosetta Mariani, husband and wife, Young Buick Company, an Arizona corporation, and General Motors Corporation, a Delaware corporation, Appellees.**

**No. 2 CA–CIV 633.**

Court of Appeals of Arizona.

Division 2.

Jan. 8, 1970.

Rehearing Denied Feb. 3, 1970.

Review Denied March 3, 1970.

Holesapple, Conner, Jones, McFall & Johnson, by Blair D. Benjamin, Tucson, for appellants.

Chandler, Tullar, Udall & Richmond, by James L. Richmond, Tucson, for appellees Mariani.

Murphy & Vinson, by John U. Vinson, Tucson, for appellee Young Buick Co.

Lesher, Scruggs, Rucker, Kimble & Lindamood, by William Kimble, Tucson, for appellee General Motors Corp.

Miller, Pitt & Feldman, by Stanley G. Feldman, Tucson, amicus curiae.

HOWARD, Chief Judge.

■ The plaintiffs have filed a motion for a rehearing in this case. We also permitted the filing of an Amicus Curiae brief supporting plaintiffs' motion for rehearing. Since the time of the rendering of the original opinion and the motion for rehearing, there has been a reconstitution of this court. We do not believe that a mere fortuitous reconstruction of the court should be grounds for a rehearing, nor do we believe that a rehearing should be granted unless there is some cogent reason for so doing. However, in questions involving the public policy of the State of Arizona, re-examination of our previous decision is proper. See, State ex rel. Nelson v. Jordan, 104 Ariz. 193, 450 P.2d 383 (1969), appeal dismissed, Jordan v. Arizona ex rel. Nelson, 396 U.S. 5, 90 S.Ct. 24, 24 L.Ed.2d 4. See also basis for rehearing in State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960).

After consideration of the briefs filed with plaintiffs' motion for rehearing, we grant the motion. The facts are as set forth in our original decision in Caruth v. Mariani, 10 Ariz.App. 277, 458 P.2d 371 (1969), and we see no need to restate them.

■ The original majority opinion refused to extend the doctrine of strict liability to the "bystander." We believe this was erroneous and hold that the doctrine of strict tort liability against the manufacturer and retailer should be available to the bystander as well as to the user or consumer.

The direction of the law in the State of Arizona is clear. In the case of O. S. Stapley Co. v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968), our Supreme Court laid to rest the question of whether or not the manufacturer's liability with regard to defects in his product rests upon contract or tort. The court in that case adopted the American Law Institute's Restatement of the Law of Torts.[1] The Restatement on its

---

1. The American Law Institute's Restatement of the Law of Torts (Second) (1965) states in § 402A:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his

face applies only to "user or consumer." While this language has a broad meaning, Restatement (Second) of Torts, Explanatory Notes § 402A, comment 1 at 354 (1965); cf. Delaney v. Towmotor Corp., 339 F.2d 4 (2d Cir. 1964), the Restatement expressly warns that it takes no position on bystander's recovery. Restatement (Second) of Torts, Explanatory Notes § 402A, comment o at 356 (1965).

All states which have adopted the theory of strict tort liability have extended the theory to the bystander when called upon to do so. Elmore v. American Motors Corp., 70 A.C. 615, 75 Cal.Rptr. 652, 451 P.2d 84 (1969); Mitchell v. Miller, 26 Conn.Supp. 142, 214 A.2d 694 (1965); Piercefield v. Remington Arms Co., 375 Mich. 85, 113 N. W.2d 129 (1965); Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex.1969); and Sills v. Massey-Ferguson, Inc., D.C., 296 F.Supp. 776 (1969), interpreting the law of Indiana and see also Klimas v. International Telephone & Telegraph Corp., D.C., 297 F.Supp. 937 (1969), interpreting the law of West Virginia wherein the "consumer-user" limitation of Restatement (Second) of Torts § 402A was eliminated to await "development with respect to the extent of liability to non-user, non-consumer injured persons."

 Strict tort liability is not assumed by agreement, but is imposed by law for reasons of public policy. O. S. Stapley Co. v. Miller, supra; Estabrook v. J. C. Penney Co., 10 Ariz.App. 114, 456 P.2d 960 (1969); Elmore v. American Motors Corp., supra. Thus, concepts applicable to the law of contracts are foreign to the theory of strict liability in tort. The doctrine applies even where the manufacturer has attempted to limit liability. Vandermark v. Ford Motor

Co., 61 Cal.2d 256, 263, 37 Cal.Rptr. 896, 391 P.2d 168 (1964). It is therefore clear that the doctrine may not be limited on the theory that no representation of safety is made to the bystander. As stated in *Elmore,* supra:

"It has been pointed out that an injury to a bystander 'is often a perfectly foreseeable risk of the maker's enterprise, and the considerations for imposing such risks on the maker without regard to his fault do not stop with those who undertake to use the chattel. [A restriction on the recovery by bystanders] is only the distorted shadow of a vanishing privity which is itself a reflection of the habit of viewing the problem as a commercial one between traders, rather than as part of the accident problem.' (2 Harper and James, The Law of Torts (1956) p. 1572, fn. 6.)"

The *Elmore* case puts forth another good reason for extending the doctrine to the bystanders, namely, that they should be entitled to greater protection than the consumer or user where the injury to the bystander from the defect is reasonably foreseeable because consumers and users, at least, have an opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, whereas the bystander ordinarily has no such opportunity. Or, to put it in another way, at least the consumer or user when buying an automobile has a chance to "kick the tires."

The majority in the original decision in this case stated that it would not be averse to extending the doctrine to bystanders as far as the manufacturer's liability is concerned but was reluctant to do so. The cause of its reluctance was the belief that

property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
 (a) the seller is engaged in the business of selling such a product, and
 (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although
 (a) the seller has exercised all possible care in the preparation and sale of his product, and
 (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

if the court were to extend the doctrine to bystanders as far as manufacturers are concerned, then the next step would be to impose strict liability upon the retailers. It opined that such an extension would be "impregnated with inconsistency" and would "impale the middleman on this sort of liability." As far as creating an inconsistency, adherence to the majority opinion in the original decision in this case would be perpetuating a greater inconsistency, since the retailer has already been "impaled" by the Restatement. It makes him strictly liable to the user-consumer even though he has exercised all possible care in the preparation and sale of the product and even though the user or consumer has not bought the product from or entered into any contractual relationship with the seller.

Perhaps a hypothetical case would be appropriate to indicate the result of failing to extend the doctrine of strict tort liability to the bystander: John Jones has purchased a new automobile. He is proud of his new purchase, and, desiring to show the car off, he gives his neighbor, Tom Brown, permission to drive it. Mr. Jones climbs in the passenger seat and off they go. Due to no fault of Mr. Brown and due solely to a defective steering mechanism, the car leaves the road and strikes Richard Roe who is walking on the sidewalk. After striking Richard Roe, the car hits a wall and comes to rest. Mr. Brown received minor cuts. Mr. Jones is not injured. Richard Roe is paralyzed for life. Under our original decision, Mr. Brown, the neighbor and driver, could hold both the retailer and manufacturer under the strict tort liability theory because he is a "consumer or user," but Richard Roe can sue neither.

The foregoing example leads to a result which we frankly are unable to rationalize. Such a result can only come from failing to recognize that the action is not based upon any idea of contractual law but upon a tort concept based on public policy. The public policy is to protect "injured persons" and not just "users and consumers."

In the landmark case of Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049 (1962), Justice Traynor stated:

"* * * The purpose of such liability is to insure that the cost of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the *injured persons* who are powerless to protect themselves. * * *" (Emphasis added.)

That the use of the words "injured persons" in *Greenman* was not an accident or oversight is evident when in *Elmore* the court stated:

"The liability has been based upon the existence of a defective product which caused injury to a human being, and in both *Greenman* and *Vandermark* we did not limit the rules stated to consumers and users but instead used language applicable to human beings generally."

Neither do we think it an accident or oversight when Justice Lockwood in her concurring opinion in Nalbandian v. Byron Jackson Pumps, Inc., 97 Ariz. 280, 399 P.2d 681 (1965) stated:

"In the Colvin case, supra, we adopted Greenman v. Yuba Power Products, Inc. * * *."

The retailer as well as the manufacturer should be liable.

In Vandermark v. Ford Motor Co., supra, the court stated:

"Retailers like manufacturers are engaged in the business of distributing goods to the public. They are an integral part of the overall producing and marketing enterprise that should bear the cost of injuries resulting from defective products."

This view was adopted by our Supreme Court in the *Stapley* case. As a matter of fact, in some cases the retailer may be the only member of the enterprise that is available to the injured plaintiff. The question resolves itself to a balancing of interest.

Who should bear the loss? The injured member of the public or those persons who are in the chain of placing defective goods on the market. We choose to protect the member of the public since those involved in the chain of marketing can distribute the risk between themselves by means of insurance and indemnity agreements. They should be better equipped economically to do so than some innocent member of the public. If only one entity in the chain of marketing is subject to liability to the victim, and that one is financially irresponsible, it is no comfort to the victim to know that he has a theoretically valid complaint against one defendant.

■ Finally, defendants contend that our decision in this case should be governed by those portions of the Uniform Commercial Code adopted by the State of Arizona in 1967, and more specifically, A.R.S. § 44–2335, which extends liability to members of the household and guests. This contention has no merit since the accident occurred in 1964 during which time we were under the Uniform Sales Act. The applicability of the Uniform Sales Act to strict liability in tort has already been disposed of by us in the case of Bailey v. Montgomery Ward & Co., 6 Ariz.App. 213, 431 P.2d 108 (1967), wherein we made it clear that liability is not governed by the law of contract warranties but by the law of strict liability in tort. We also stated that the remedies of injured consumers ought not to be made to depend upon the intricacies of the law of sales.[2]

We really do not see any material difference for our purposes between the old Uniform Sales Act and the Uniform Commercial Code. The intricacies of the law of sales still appears in the U.C.C. The U.C.C. parallels the doctrine of strict tort liability but the two should not be confused with each other. They are "different breeds of cat." Strict tort liability is based on public

policy. Express and implied warranties under the U.C.C. are based on contract. The U.C.C. still talks about disclaimers and notice. These are not tort concepts.

The judgment as to the defendants Mariani is therefore affirmed and the judgment as to the defendants Young Buick and General Motors Corp. is reversed and the cause remanded for new trial.

HATHAWAY, J., and WILLIAM C. FREY, Superior Court Judge, concur.

NOTE: Judge HERBERT F. KRUCKER having requested that he be relieved from consideration of this matter, Judge WILLIAM C. FREY was called to sit in his stead and participate in the determination of this decision.

---

2. For a discussion of the impact of the Uniform Commercial Code on the doctrine of strict liability see Robert E. Keeton, Venturing to Do Justice (Harvard University Press 1969) pp. 114–125 and Klimas v. International Telephone & Telegraph Corp., supra, 297 F.Supp. at p. 942.