115 N.J. Super. 514 (1971)
280 A.2d 241
ELVERA LAMENDOLA AND ALPHONSE LAMENDOLA, HER HUSBAND, PLAINTIFFS,
v.
LUCIUS W. MIZELL ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided July 2, 1971.
*516 Mr. Bruno L. Leopizzi argued the motion for plaintiffs (Mr. Bruno L. Leopizzi and Mr. Carmen A. Ferrante, attorneys; Mr. Donald G. Collester, Jr., on the brief).
Mr. Wood M. DeYoe argued the motion for defendant Lucius W. Mizell (Messrs. DeYoe, DeYoe & Guiney, attorneys).
*517 Mr. Carroll A. Morley argued the motion for defendant General Motors Corporation (Messrs. Lamb, Blake, Hutchinson & Dunne, attorneys; Mr. William J. Cleary, Jr., on the brief).
Mr. Peter G. Alexis argued the motion for defendant Cerami Pontiac (Messrs. Aljian & Alexis, attorneys).
DOAN, J.C.C. (temporarily assigned).
This matter is before the court on motion of two of the defendants for judgment notwithstanding the verdict, or in the alternative, for a new trial, and on motion of the third-defendant addressed to the excessiveness of the verdict in favor of plaintiff Alphonse Lamendola.
After a five-day trial the jury returned verdicts in the amounts of $100,000 and $50,000 for plaintiffs Elvera Lamendola and her husband Alphonse, respectively. The damages were assessed against all defendants, Lucius Mizell, Cerami Pontiac and General Motors Corporation, upon findings of negligence of Mizell and of breach of warranty ("products liability") of Cerami and General Motors.
Evidence uncontroverted at trial showed that defendant Mizell had purchased a new 1966 Grand Prix Pontiac from Cerami. On December 4, 1965, the date of delivery, with approximately eight miles registered on the odometer, the Mizell vehicle went out of control and struck plaintiffs' automobile head on in the lane in which the latter was travelling. It appeared further from the proofs that the Mizell vehicle went out of control due to an accelerator pedal which, when depressed, stuck and stayed down on the floor of that car; it was claimed that the linkage bound, most likely at the bell crank. There was controversy as to whether the vehicle lurched forward from a parked position or was intentionally accelerated by Mizell, but it was clear that the car travelled some 340 feet before striking the Lamendola vehicle travelling in the opposite direction.

*518 I
Defendants urge the inconsistency of the companion verdicts of products liability against General Motors and Cerami Pontiac with the verdict of negligence against Mizell, the driver of the vehicle.
Initially it should be remarked that the legal theories of products liability and negligence are not mutually repulsive; each arises from a misfeasance or nonfeasance in violation of a legal duty. Furthermore, a tortfeasor is generally held answerable for the injuries which result in the ordinary course of events from his negligence, and it is generally sufficient if his negligent conduct was a "substantial factor" in bringing about the injuries. Rappaport v. Nichols, 31 N.J. 188, 203 (1959). See also: Restatement, Torts 2d, §§ 431, 432. It is the rule in New Jersey that one who negligently creates a dangerous condition cannot escape liability for the natural and probable consequences thereof although the act of a third person may have contributed to the final result. Menth v. Breeze Corporation, Inc., 4 N.J. 428 (1950). The above rules are eminently applicable here. Clearly, defective manufacture and negligence are implicit in the verdicts. Upon any of the theories presented in the factual pattern it cannot be said that the verdicts are, by their nature, inherently inconsistent. In the final analysis it is solely the function of the jury to determine whether each defendant's actions were substantial factors in causing the plaintiffs' injuries. Brower v. N.Y.C. & H.R.R.R. Co., 91 N.J.L. 190 (E. & A. 1917), and their determinations will not herein be disturbed.

II
The absence of privity between plaintiffs and defendants General Motors and Cerami Pontiac presents an issue four-square for determination, namely, whether an "innocent bystander," injured by a defective product in the hands of the consumer or user, can maintain an action against the *519 manufacturer and seller on the theory of strict liability in tort? This question has not, to the present time, been resolved by the courts of this jurisdiction, and the language of the Supreme Court in Courtois v. General Motors Corporation, 37 N.J. 525 (1962), indicates that determination of this issue has been specifically reserved. However, the direction of the law of products liability in this jurisdiction has become quite clear from the thrust of two recent decisions:
Cintrone v. Hertz Truck Leasing, etc., 45 N.J. 434 (1965), held that a warranty for fitness extends beyond the pure "sales" relationship and could properly constitute the basis for recovery by the injured employee of a bailee for hire.
Rosenau v. New Brunswick and Gamon Meter Co., 51 N.J. 130 (1968), held that recovery for property damages sustained as a result of a defective water meter, installed some 14 years prior to the incident by the municipality, was proper under the theory of products liability although there was no indication of "sale" of privity between the manufacturer and the plaintiff home-owner.
Yet, considering the foregoing, upon what legal foundation is this court prepared to rule on a matter presently undecided in this jurisdiction? Section 402A of the Restatement, Torts 2d, offers no direction, despite the fact that its rule has been adopted verbatim in New Jersey as the basis for actions sounding in strict liability in tort. Section 402A speaks in terms of applicability to "users and consumers",[1] and, although these terms appear to be self-limiting, the caveat to this section declares, "The Institute expresses no opinion as to whether the rule stated in this section may not apply (1) to harm to persons other than users or consumers * * *."
*520 Until recently, the numerous jurisdictions that have denied recovery to those not evincing some degree of privity with the manufacturer or seller have done so as a result of apparent confusion with the dual concepts of "implied warranty," one theory sounding in tort (products liability or strict liability in tort) and the other designated by the Uniform Commercial Code and guided by the law of contracts. Inherent in the confusion or caution is an abiding concern that products liability, if unchecked, would result in liability without fault as this concept would apply to the duty owed by a manufacturer to the public-at-large. Cf. Hahn v. Ford Motor Co., 256 Iowa 27, 126 N.W.2d 350 (Sup. Ct. 1964); Berzon v. Don Allen Motors, 23 App. Div.2d 530, 256 N.Y.S.2d 643 (App. Div. 1965); Davidson v. Leadingham, 294 F. Supp. 155 (D.C. Ky. 1968). Other courts, struggling with the concept embodied in section 402A of the Restatement, have engaged in legal gymnastics to find the plaintiff to be a "user or consumer" and thus within the purview of that section. Cottom v. McGuire Funeral Service, 262 A.2d 807 (D.C. App. 1970).
However, New Jersey, long in the vanguard of products liability since Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358 (1960), has contributed to the recognition and careful application of the inherent distinctions between the two warranty theories. In Rosenau, supra, our Supreme Court cited with approval the discussion by Dean Prosser in his article, "Spectacular Change: Products Liability in General," 36 Cleve. B.A.J. 149 (1965):
It has been said over and over again that this warranty  if that is the name for it  is not the old sales warranty, it is not the warranty covered by the Uniform Sales Act or the Uniform Commercial Code. It is not a warranty of the seller to the buyer at all, but it is something separate and distinct which sounds in tort exclusively, and not at all in contract; which exists apart from any contract between the parties; and which makes for strict liability in tort. [51 N.J., at 141]
It follows, then, that any analysis of the application of products liability theory to innocent bystanders must at once *521 be free from the limitations inherent in the field of contracts, and thus it becomes an issue of public policy, bolstered by logically sound legal reasoning, to determine how far this concept shall be advanced. Most recently eight cases have been reported which have unequivocally applied the theory of strict liability to innocent bystanders, thereby repudiating any privity requirement: Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129 (Sup. Ct. 1965); Mitchell v. Miller, 26 Conn. Super. 142, 214 A.2d 694 (Super. Ct. 1965); Elmore v. American Motors Corp., 70 Cal.2d 578, 451 P.2d 84 (Sup. Ct. 1969); Sills v. Massey-Ferguson, Inc., 296 F. Supp. 776 (D.C. Ind. 1969); Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex. Sup. Ct. 1969); Preissman v. Ford Motor Co., 1 Cal. App.3d 841, 82 Cal. Rptr. 108 (D. Ct. App. 1969); Caruth v. Mariani, 11 Ariz. App. 188, 463 P.2d 83 (Ct. App. 1970), and Wasik v. Borg, 423 F.2d 44 (2 Cir.1970).
In Piercefield, the landmark case in this area, the Michigan Supreme Court allowed plaintiff to recover against the manufacturer of a rifle for injuries incurred when the shotgun which plaintiff's brother was firing exploded due to a defect of construction in the barrel.
In Mitchell, decided by the Connecticut court shortly after Piercefield was published, plaintiff's decedent was fatally injured on a golf course when the automobile which one defendant had parked on an incline slipped out of "Park" and rolled down the hill. Defendant manufacturer's demurrer to the complaint was overruled.
Elmore v. American Motors Corp. was an almost inevitable decision, since the California courts in Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal. Rptr. 697, 377 P.2d 897 and Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168 modified the language of section 402A insofar as it was to apply in California to include all "human beings" rather than the limitation of "users and consumers." Thus, in Elmore a defective drive shaft, which caused an automobile to veer out of control *522 and to fatally injure plaintiff's decedent in the struck vehicle, gave rise to a cause of action against the manufacturer for products liability. The same result was reached in another California case, Preissman v. Ford Motor Co., where a parked car slipped out of parking gear and rolled, striking a minor and causing the loss of his left leg.
In Caruth the result of the appeal upon initial consideration by the Arizona court (reported in 10 Ariz. App. 277, 458 P.2d 371) was overturned upon rehearing. In Caruth, as in Darryl, supra, plaintiff was injured when his vehicle was struck in the rear by another vehicle out of control, this time due to a defect in the brakes.
Wasik v. Borg and Sills v. Massey-Ferguson, Inc., were heard in the federal district courts where, in diversity actions, the courts were called upon to apply Vermont and Indiana law, respectively. The decisions rested upon the determinations that both states would favor recovery by bystanders against manufacturers on the theory of products liability, although the state courts had yet to pass upon this question directly.
We see by all of the foregoing that there is ample precedent in other jurisdictions for the extension of protection to the casual or innocent bystander. Most persuasive is the language of the California court in Elmore:
It has been pointed out that an injury to a bystander "is often a perfectly foreseeable risk of the maker's enterprise, and the considerations for imposing such risks on the maker without regard to his fault do not stop with those who undertake to use the chattel. [A restriction on the recovery by bystanders] is only the distorted shadow of a vanishing privity which is itself a reflection of the habit of viewing the problem as a commercial one between traders, rather than as part of the accident problem." [2 Harper and James, The Law of Torts (1956), 1572, fn. 6]
If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable. Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, whereas the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection *523 from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made, contrary to the position of defendants, to extend greater liability in favor of the bystanders. [451 P.2d at 89; emphasis added.]
It is this language, and the inherent good sense which gives it life, that renders all arguments to the contrary mere vapid, shallow breaths. In this age of sweeping social awareness and the attendant legal revolution, the concept of affording redress to bystanders on the basis of products liability is movement in an inevitable direction. Yet, in Henningsen, our signal case, language can be found which serves as the clarion call for what we find today:
In the 44 years that have intervened since that utterance (MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050), the average car has been constructed for almost double the speed mentioned; 60 miles per hour is permitted on our parkways. The number of automobiles in use has multiplied many times and the hazard to the user and the public has increased proportionately. The Legislature has intervened in the public interest, not only to regulate the manner of operation on the highway but also to require periodic inspection of motor vehicles and to impose a duty on manufacturers to adopt certain safety devices and methods in their construction. R.S. 39:3-43 et seq. It is apparent that the public has an interest not only in the safe manufacture of automobiles, but also, as shown by the Sales Act, in protecting the rights and remedies of purchasers, so far as it can be accomplished consistently with our system of free enterprise. In a society such as ours, where the automobile is a common and necessary adjunct of daily life, and where its use is so fraught with danger to the driver, passengers and the public, the manufacturer is under a special obligation in connection with the construction, promotion and sale of his cars. * * * [32 N.J. at 387; emphasis added]
In discussing the Henningsen case Justice Black of the Michigan Supreme Court commented in Piercefield, supra:
* * * Would anyone, having read the court's exhaustive opinion, expect a result reasoned differently had, say, the plaintiff been a pedestrian who, when the Henningsen car "veered sharply to the right and crashed into a highway sign and a brick wall," suffered crushed legs as the car struck the wall * * *? [133 N.W.2d at 135]
*524 The public policy enunciated in Henningsen, however, is not a shield against reason and prudence, and the great body of the common law that has served us so well to this point in time is the amalgamation of all three influences. So it is that we must temper reason and prudence to cut a line of restraint, lest we abandon all that has gone before.
By discharging all concepts of privity in actions such as the one at bar, we must guard against discharging restraint as well. Such restraint is of the kind and character found in the dominion of negligence, namely, the foreseeability of the injury as a result of the defect. Mitchell v. Miller and Elmore v. American Motors Corp., supra. See also, Santor v. A. & M. Karagheusian, 44 N.J. 52 (1965). But the limitations inherent in the concept of foreseeability, insofar as it applies to legal responsibility and the facts of the instant case, offer no salve for defendants' wounds. An automobile manufacturer, producing millions of vehicles a year, offers them for sale to the public ultimately for daily use on the countless thoroughfares of this nation. It is, therefore, well within the realm of foreseeability that a pedestrian or other traveller lawfully upon the road will be injured due to a defect in a vehicle that in some way inhibits or forecloses its control by the driver. This, then, is our holding today, a response to the simple and compelling case presented for determination. Thus, strict liability in tort, insofar as it applies to bystanders, provides a legal remedy where legal responsibility is properly placed.

III
Plaintiffs' departure from two pretrial orders which appear to limit the scope of the hypothetical question propounded to plaintiffs' expert at the time of trial is further assigned as error. The pretrial orders in question sought to narrow the scope of the hypothetical by requiring in writing and in advance of trial the specific facts upon which said *525 hypothetical would be based, along with the proposed answer of the expert.
There is little doubt that the pretrial orders became law for the purposes of this trial, and material deviation therefrom could be prejudicial to the party in whose favor the orders were drawn. However, in construing the spirit as well as the letter of the orders, it becomes evident that they were drawn with Evidence Rule 56(2) in mind. That rule provides that a hypothetical question propounded at trial be restricted to evidence adduced during the course of that trial. The limited depth of the restriction was also borne out in the fact that the words "and limited to," which preceded the mandate of the orders, were stricken by the judge who signed them. There was no evidence of bad faith on the part of plaintiffs, nor can it be said that the slight departure in the hypothetical question constituted surprise to the defendants. The latters' experts were seated in the courtroom at the time the hypothetical was asked, knew exactly the nature of the defect claimed, and counsel for defendant General Motors thereafter engaged in vigorous cross-examination of plaintiffs' expert. It is therefore concluded that the thrust of the pretrial orders was not intended to compulsorily restrict the use of the hypothetical question, and the reasonable deviation therefrom did not constitute surprise, prejudice or disadvantage to defendants.

IV
Defendants allege prejudice in the exposure to the jury of numerous color slides depicting Mrs. Lamendola in the hospital after the accident, and the unidentified bell crank produced by plaintiffs' attorney and snapped into two pieces by him during cross-examination of a defense witness. The fact that neither the slides nor the bell crank were offered into evidence at the trial should not preclude the application of Evidence Rule 4 and its attendant principles discussed in Stoelting v. Hauck, 32 N.J. 87 (1960). The *526 color slides present a problem similar to that found in Jastremski v. General Motors Corp., 109 N.J. Super. 31 (App. Div. 1970), and Gambrell v. Zengel, 110 N.J. Super. 377 (App. Div. 1970). Both cases held that the admission of such matters was discretionary with the trial judge. The relevance of the injuries to Mrs. Lamendola as depicted in the slides was manifestly relevant to the issue of damages.
The same principle could be said to apply to the incident concerning the bell crank. It cannot be said that such was prejudicial to defendants, either from a quantitative assessment of the time consumed or from the qualitative nature of the display.

V
Defendants charge error in the usage of "breach of warranty" terminology in the jury instructions, in place of the term "strict liability in tort." It is settled beyond discussion that the two phrases are synonymous in concept when applied to situations described by facts such as those found in the instant case. The rule is well established that, so long as the law is stated correctly and intelligently, the ultimate test of the soundness of the instructions is not what the ingenuity of counsel can, at leisure, work out the instructions to mean, but how and in what sense, under the evidence before them and the circumstances of the trial, would ordinary men and jurors understand the instructions as a whole. Kargman v. Carlo, 85 N.J.L. 632 (E. & A. 1914); Vadurro v. Yellow Cab Co. of Camden, 6 N.J. 102 (1950).
It cannot be said that under the circumstances the charge contained clear error worthy of a new trial.

VI
The motions for judgment notwithstanding the verdict (R.R. 4:49-1(a)) are circumscribed by the principles discussed in Dolson v. Anastasia, 55 N.J. 2 (1969). In the *527 present case there are numerous theories upon which the jury could have rested its determination, but it is not within the province of the trial judge to speculate upon the course of deliberations within the confines of the jury room; rather, it is incumbent upon the court merely to determine whether, as a matter of law, any one possible theory of liability is substantiated by the evidence taken as a whole in order to support the verdict. Smith v. Lorillard Co., 67 N.J.L. 361 (Sup. Ct. 1902). The circumstantial quality of the proof of defect is sufficient to support the verdicts against General Motors and Cerami Pontiac. Cf. Henningsen v. Bloomfield Motors Inc., 32 N.J. 358 (1960); Cintrone v. Hertz Truck Leasing, etc., 45 N.J. 434 (1965); Sabloff v. Yamaha Motor Co., 113 N.J. Super. 279 (App. Div. 1971). And the quality of the circumstantial evidence adduced at trial went beyond the "surmise or conjecture" problem confronting the court in Jakubowski v. Minnesota Mining and Manufacturing Co., 42 N.J. 177 (1964). It cannot, therefore, be said that the verdicts were the result of mistake, passion, prejudice or partiality, nor was there a miscarriage of justice under the law.

VII
Lastly, the claim that the verdict in favor of Alphonse Lamendola is excessive is not supported by the proofs. The evidence at the trial was ample to justify the amount of the award.
Accordingly, the several motions of the defendants for judgment notwithstanding the verdicts, or, in the alternative, for a new trial, or for reduction of the verdict of Alphonse Lamendola be and each of them are denied.
NOTES
[1] "One who sells any product of a defective condition unreasonably dangerous to the user or consumer or to this property is subject to liability for the physical harm thereby caused to the ultimate user or consumer * * *."