**Wagner v. Studt**

*Marlin B. Stephens,* for plaintiff.

*R. Thomas Strayer, Edward G. Kuyat, Jr.* and *James F. O'Malley,* for defendants.

McDONALD, P. J., April 6, 1973.—This matter is before the court en banc on motions of Bingler Ford Sales and Ford Motor Company for new trial and judgment notwithstanding the verdicts.

On January 12, 1969, at approximately 2 p.m., Elizabeth J. Wagner was driving her 1968 Ford Mustang convertible automobile outbound from the City of Johnstown in a northwesterly direction on Roosevelt Boulevard. A station wagon was stopped in front of her and she slowed down and was nearly stopped when her automobile was struck from the rear by one operated by Herbert Studt. The Studt automobile had been struck in the rear by a 1969 Ford LTD, operated by Ernest Rummel. The Wagner automobile was damaged to the extent of $133.55; the Studt automobile and the Rummel automobile were also damaged. Herbert Studt received personal injuries as a result of the collision.

Elizabeth J. Wagner brought suit as plaintiff to December term, 1969, no. 686, against Herbert Studt, defendant. Defendant brought in Ernest Rummel as additional defendant, who, in turn, brought in two additional defendants, Bingler Ford Sales (herein Bingler) and Ford Motor Company (herein Ford).

Herbert Studt brought suit to March term, 1970, no. 458, against Ernest Rummel, defendant, who brought in as additional defendants, Bingler and Ford.

In both suits there were general allegations of negligence involving the operation of the motor vehicles by Herbert Studt and Ernest Rummel. The complaint against Bingler and Ford alleged the accelerator of the automobile operated by Ernest Rummel "jammed, causing his automobile to strike the rear of the Studt

vehicle." In paragraphs 11 and 12, it alleged negligence on the part of additional defendants, and specifically alleged the manufacture and sale of a defective automobile.

The two cases were consolidated for trial, and, upon trial to a jury, a verdict was rendered in favor of plaintiff, Elizabeth J. Wagner, in the amount of $133.55 against Bingler and Ford, additional defendants. A verdict was also rendered in favor of Herbert Studt in the amount of $7,200 against Bingler and Ford. Verdicts in favor of Herbert Studt and Ernest Rummel were also returned.

Bingler and Ford contend the court erred (1) in submitting the case to the jury under section 402A of the Restatement 2d, Torts; (2) in denying their motions for compulsory nonsuit; (3) in its charge to the jury, specifically, referring to absolute liability, and its general charge on joint and concurrent liability.

1. *Did the court err in submitting the case on the doctrine of strict liability?*

Bingler and Ford argue (1) the doctrine of strict liability under section 402A of the Restatement 2d, Torts, was not pleaded, (2) the court erred in extending the doctrine to persons other than users and consumers.

We are satisfied the case was properly submitted to the jury on the issue of strict liability. Paragraphs 10 and 11 of Rummel's complaint against additional defendants, while pleading negligence, was, in fact, a pleading of strict liability under section 402A. The allegation of these two paragraphs rely on the wording of section 402A; hence, it is obvious liability rests upon the sale of a motor vehicle with a defective condition which was dangerous "in the operation of the vehicle." The pretrial conference notes show, without specifically mentioning section 402A, that Rummel's theory was based on products liability.

In view of the revelations of the pretrial conference, which took place in sufficient time before the trial, and the wording of the aforesaid paragraphs, it is specious to argue Bingler and Ford were not aware of the claim of strict liability. To now hold it was insufficiently pleaded would exalt form over substance. Where the complaint states a cause of action and the evidence supports the allegations, plaintiff's verdict may be sustained whatever the theory on which liability might be based: Curry Coal Co. v. Arnoni Co., 439 Pa. 114; Kopka v. Bell Telephone Co. of Pa., 371 Pa. 444; Federoff v. Harrison Construction Co., 362 Pa. 181.

We note in Forry v. Gulf Oil Co., 428 Pa. 334, 340, plaintiff's complaint alleged *negligence* of each of the defendants, but, as in the case at bar, specifically pleaded the manufacture and sale of a defective product. Notwithstanding this mispleading, the Supreme Court in its opinion ruled the liability of defendants as manufacturers, wholesalers and retailers "arises from §402A and not from the application of the doctrines of res ipsa loquitur or exclusive control." (Italics supplied.)

Bingler in particular alleges prejudice in that it was deprived of the opportunity to bring Ford on the record for purposes of indemnification as the manufacturer of a defective product. However, the pretrial notes again, as well as the pleadings, the latter whether interpreted as negligence or strict liability by Bingler, were filed in sufficient time to allow action to be brought. This was not done. It is obvious too, Bingler fails to show prejudice, since the verdict will support an indemnification should it be required to satisfy the judgment.

The main thrust of the argument under this point is the extension of the strict liability doctrine to those not consumers or users.

The doctrine of strict liability has evolved from a requirement of vertical privity in Miller v. Preitz, 422 Pa. 383, through the extension of the doctrine without altering the requirement of horizontal privity in Kassab v. Central Soya, 432 Pa. 217, and then on to the logical elimination in Webb v. Zern, 422 Pa. 424, of privity and negligence as essential conditions for recovery. Thus, today, the Supreme Court of Pennsylvania recognizes, without the encumbering disadvantages of negligence or assumpsit pleadings and election of remedies, the doctrine of strict liability under section 402A of the Restatement 2d, Torts.

Section 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

It is significant in the caveat under 402A: "The Institute expresses no opinion as to whether the rule stated in this Section may not apply (1) to harm to persons other than users or consumers."

In this case, plaintiffs, Wagner and Studt, were third parties injured by the alleged defect in the automobile operated by Rummel, sold by Bingler and manufactured by Ford. They were not under the strict liability doctrine of 402A, users or consumers. The trial judge,

after explaining the doctrine of strict liability and its application to users and consumers, stated, "Now, we perceive the law to be, and so instruct you, that this strict liability not only extends to purchasers and consumers and users of the product, such as an automobile, but to those persons who are injured, in person or property, by a defective product in the ordinary and foreseeable use for which it was intended. Now, I don't think it takes much imagination to conclude that an automobile is intended to be used on the highway. So, if you would find this was the ordinary and foreseeable use of an automobile, then that, of course, would be one of the elements that would lead you on to the next element of proof." Thus, the trial judge submitted to the jury an extension of the doctrine of strict liability beyond that heretofore ruled upon by our appellate courts. As we have seen from the evolution of the doctrine in the short period of a few years, it is in a fluid state; its limits not reached, and the umbrella of its protection not fully spread. The adoption of rule 402A, as the law of this Commonwealth, does not foreclose its extension where reason and sound public policy so dictate.

An excellent collection of cases from other States is found in 33 A.L.R. 3d, 415. In that annotation we find support for the position that the public policy which protects the user and consumer in product liability cases should also protect the "innocent bystander." Reason and logic support this position where the foreseeable use for which the product is intended would, if it were defective, present a hazard or dangerous condition to others than the user. If, in its foreseeable use, a product is dangerous not only to the user and consumer, but to third parties not in these classes, an enlightened law, when the evidence is sufficient, ought to offer the latter some remedy for injury. It

seems unreasonable and unjust to limit the protection of strict liability to users and consumers, and refuse that protection to third parties who do not qualify in either status, but who nonetheless by misfortune are innocently within the foreseeable orbit of danger of a defective product. If we are to view strict liability as cause and effect, it cannot be limited to those who are in some way related to the sale, purchase and use of a product. To do so raises in some aspects the cadaver of privity, which has hopefully been laid to rest, and disregards the time-worn principle that for every injury there should be redress. True, the third party can sue on the theory of negligence, but again the doctrine of strict liability has been universally adopted to eliminate the need for proof of negligence which, in many cases, would be costly, time consuming and often impossible.

There is a trend in other States which recognizes that manufacturers and sellers who place in commerce, products rendered dangerous to life and limb by reason of some defect, are strictly liable in tort to a nonuser or nonconsumer injured by the products. Those cases relating to defects in vehicles are: Lamendola v. Mizell, 115 N.J. Super. 514, 280 A. 2d 241 (1971); Caruth v. Mariani, 11 Ariz. App. 188, 463 P. 2d 83; Elmore v. American Motors Corp., 70 Cal. 2d 578; 451 P. 2d 84 (1969); Preissman v. D'Ornellas, 1 Cal. App. 3d 841, 82 Cal. Rpt. 108; Darryl v. Ford Motor Co., 440 S.W. 2d 630 (1969 Tex.); Mitchell v. Miller, 26 Conn. Sup. 142, 214 A. 2d 694 (1965); Sills v. Massey-Ferguson, 296 F. Supp. 766 (1969 D.C. Ind.).

Factually, Lamendola, supra, is quite similar to the case at bar. Plaintiff sued defendant operator, the dealer who had sold the automobile, and the manufacturer, for injuries resulting when defendant operator's automobile collided with that of the plaintiff. Both neg-

ligence of the driver and strict liability of the dealer and manufacturer were alleged. The defect, as here, was in the throttle mechanism. In sustaining a verdict against the driver on negligence, and the dealer and manufacturer on strict liability, the court borrowed the very apt language of Elmore, supra, at page 586:

"It has been pointed out that an injury to a bystander 'is often a perfectly foreseeable risk of the maker's enterprise, and the considerations for imposing such risks on the maker without regard to his fault do not stop with those who undertake to use the chattel.'

"If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable. Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers, whereas the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made, contrary to the position of defendants, to extend greater liability in favor of the bystanders."

Our research fails to reveal any Pennsylvania appellate decisions on the issue. However, Flavin v. Aldrich, 213 Pa. Superior Ct. 420, tried before Webb v. Zern, supra, but decided on appeal after that decision, gives some indication of the direction our Superior Court thinks proper in strict liability cases involving injuries to innocent third parties. Mr. and Mrs. Flavin, plaintiffs, suffered injuries when an automobile operated by Mrs. Aldrich, after brake failure, struck the rear of their automobile. They sued Mrs. Aldrich and Cuda's Lincoln-Mercury, Inc., seller of the automobile

to Mrs. Aldrich shortly before the accident. The Flavins alleged negligence of both defendants and recovered a verdict. In speaking of Cuda's liability, the Superior Court, in affirming the judgment, after noting the trial judge's charge on negligence and proximate cause, stated in footnote 1, pages 426, 427:

"Although this was a proper expression of the law at the time this case was tried, since that time the Pennsylvania Supreme Court, in Webb v. Zern, 422 Pa. 424 (1966), has adopted Restatement 2d, Torts §402A (1965), 'as the law of this Commonwealth in tort actions involving the liability of those who sell products in a defective condition.' Ferraro v. Ford Motor Co., 423 Pa. 324 (1966). Under this state of the law, the plaintiff would have been entitled to a charge that Cuda would be strictly liable, regardless of negligence, if they found that defendant had sold the car in a defective condition. See: Ferraro vs. Ford Motor Co., supra."

This comment is significant since plaintiffs were third parties, or "innocent bystanders," and not purchasers or users of the automobile which was defective. Thus, it would seem the Superior Court has anticipated with approval the extension of the strict liability doctrine.

In Forry v. Gulf Oil Co., supra, the Supreme Court affirmed a nonsuit entered in the court below. However, it is implicit in that decision, under the facts, where plaintiff was neither a user or consumer, that had his proof been sufficient to sustain the theory pleaded, an extension of the doctrine of strict liability to third parties would have taken the first step to its recognition as the law of Pennsylvania.

Three vital mechanical systems, steering, braking and accelerating, govern the speed and control of an automobile. The power is directed by the accelerator

system. A defect in this vital part is per se a dangerous condition if it is capable of depriving the operator of control; it is dangerous not only to the user and consumer, but to those who by the ordinary use of an automobile, whether pedestrian, occupant or operator and occupant of other automobiles, would come within the orbit of that danger. Thus, to limit liability of those responsible for the manufacturing and marketing of such an automobile to users and consumers cannot be sustained by reason or logic. We are satisfied, therefore, the trial judge in this case properly instructed the jury on the issue of strict liability as it related to third persons who foreseeably would have been endangered by the defect.

2. *Did the court err in denying motions of Bingler and Ford for a compulsory nonsuit?*

We agree with additional defendants, and so stated in our charge on page 11, that the evidence of negligence on the part of Bingler and Ford was insufficient to submit that issue to the jury. However, for the reasons stated above, the issue of strict liability was submitted to the jury. There was sufficient evidence for this submission.

Defendant, Rummel, offered as a witness the service manager of Bingler, which at the time of trial had ceased business, who had continued in such position with Hayduk-Thiele Ford, Inc., the successor to Bingler. He was highly qualified as an expert, and, in addition, had examined and test drove the Rummel automobile when it was brought to the garage. He testified that his examination disclosed a loose nut on the bolt that holds the throttle cable, which regulated the input of gas and air to the manifold. It is by regulation of this mix the speed of the engine is controlled. The throttle cable was, because of this loose nut, permitted to come back and open the throttle, thus speeding up

the motor. He further testified the nut could not have been loosened by impact, and if it had been properly tightened on the bolt of the clamp assembly when the car was manufactured, it would not have loosened under normal usage. After extensive cross-examination, he stated had the nut been properly tightened it would not have come loose even with vibration. Again, on page 177, he reiterated his opinion the nut would not have loosened if it had been properly tightened by the manufacturer. Significantly, Mr. Towers, who was employed by Ford as a quality control engineer, and called by Ford as an expert, ruled out the theory the nut would have been loosened by impact. He further stated if the nut had been properly torqued at the factory it would not have let the housing or clamp assembly, which contains the throttle cable, move. However, it was his opinion the loose housing would cause the cable to move toward the carburetor, thus shutting off the flow of gas rather than to move toward the fire wall, thus accelerating the automobile.

Thus, we have conflicting versions of the cause of the acceleration in Rummel's automobile which resulted in the accident. In our view there was sufficient evidence by expert testimony of a defect at the manufacturing level and its relationship to acceleration, coupled with testimony of the circumstances of the accident, and condition of the throttle assembly after the accident, to require submission of the issue of strict liability to the jury: Greco v. Bucciconi Engineering Co., Inc. et al. 283 F. Supp. 378, affd. 407 F. 2d 87 (1969); MacDougall v. Ford Motor Co., 214 Pa. Superior Ct. 384.

We are satisfied the issue of causation as it related to strict liability was properly left to the jury.

3. *Did the court err in its charge to the jury?*

Bingler and Ford contend the court erred (1) in using

the term "absolute liability" in reference to the strict liability doctrine, and (2) in instructing the jury verdicts could be returned against defendants and additional defendants on the theory of concurrent proximate cause.

The only reference to absolute liability by the court is found on page 17 of the charge; all other references are to strict liability. The court instructed the jury in detail of the various elements of proof necessary to sustain this latter doctrine. Instructions were given on the necessary elements of proof, and the burdens each party must meet. It would seem unusual that a single reference to "absolute liability," after the detailed explanation of strict liability, would mislead or confuse the jury, and particularly when the case dealt with an automobile accident rather than an injury to land without fault. The reference to absolute liability referred to the liability of the manufacturer and seller under subsection 2(a) of section 402A of the Restatement 2d, Torts, that is, to distinguish the burden of proof between that of negligence and strict liability. In this context, support is found in Forry v. Gulf Oil Co., at pages 339, 340, as follows: "Recently, in Webb v. Zern, 422 Pa. 424, 220 A. 2d 853 (1966), we adopted §402A, Restatement 2d, Torts, which provides . . . *imposes strict or absolute liability rather than liability based on negligence* (comment g, §402A) and requires no privity of contract for the imposition of liability so that, in the case at bar, Goodrich, the manufacturer, Gulf Tire, the wholesaler, and Keller, the retailer and immediate vendor, would all be considered 'sellers' (comment f, §402A)." (Italics supplied.) We are satisfied, therefore, the reference to absolute liability in the context used was proper.

Bingler and Ford contend the court erred in instructing the jury it could return verdicts which could be

based on findings that Studt and Rummel (or either) were negligent, and their (or his) negligence a proximate cause, and also against additional defendants on the strict liability doctrine. They contend they can only be liable if a defective product is the sole cause of the injury. The basis for this instruction was the likelihood of some negligence on the part of both or either of these defendants which was a proximate cause of the accident. This did not rule out, however, the likelihood of a defect also being a proximate cause, concurring with that of either Studt or Rummel, or both. Forry v. Gulf Oil Co., supra, although decided as if all defendants were "sellers" (see quotes above), hence under section 402A, admits also to an interpretation there can be concurrent causes based on negligence and strict liability: Pages 337, 345.

It seems rather unusual that additional defendants complain of an instruction which was more favorable than that to which they believed they were entitled. The jury was given the opportunity to return verdicts against Studt and Rummel, solely or jointly and also against either or both on the combined issues of negligence and strict liability of Ford and Bingler. That it failed to find against either Studt of Rummel indicates it resolved this issue in their favor, and found the sole cause of the accident to be the defect for which Bingler and Ford were responsible under the strict liability doctrine.

We find no support for this objection in any reported case in the Commonwealth, where, as here, there was a consolidation of cases in which negligence was alleged, and a joinder of additional defendants on the doctrine of strict liability. Obviously the consolidation and joinder complicated the issues by requiring a determination separately or jointly of negligence, strict liability and causation.

Bingler and Ford, to support their objection, rely on a statement in Pennsylvania Trial Guide, *526.10, 1968 Supp., which refers to the application of strict liability to the manufacturer, ". . . only if the defective condition is the sole cause of the injury in question." This section referred to Forry v. Gulf Oil Co., supra, as authority.

An examination of the majority opinion in Forry indicates the case was limited to a determination of strict liability, and, although, as indicated above, the pleadings referred to negligence, it was decided on the former doctrine. In speaking of the position of all three defendants, the opinion refers to Goodrich as manufacturer, Gulf Tire as wholesaler, and Keller as retailer and immediate vendor. It concludes: "[l]iability, if it exists, arises from §402A and not from the application of the doctrine of res ipsa loquitur or exclusive control": Page 340. Thus, the random statement in Pennsylvania Trial Guide refers to the manufacturer's liability if it is the sole cause of the injury and, the vicarious liability of wholesaler and retailer, under sections 400 and 402A, Restatement 2d, Torts. This case as decided is not dispositive of the issue of concurrent liability where there is a mix of negligence and strict liability in the pleadings and evidence.

In Lamendola v. Mizell (N.J.), supra, the court had no difficulty in sustaining a verdict against the operator of the automobile which was defective, on the doctrine of negligence, and against the manufacturer and seller on the doctrine of strict liability. In doing so, it stated, at page 518; "Initially, it should be remarked that the legal theories of products liability and negligence are not mutually repulsive; each arises from a misfeasance or nonfeasance in violation of a legal duty."

While it may unduly complicate a charge to the

jury to explain negligence, causation, contributory negligence and the elements of strict liability, we must realize in this case the pleadings alleged sole and joint liability. The evidence clearly required instructions on concurrent or joint proximate cause. There was evidence of two rear end collisions which could have been caused by negligence alone, or concurrently with the defective throttle in Rummel's automobile. To have made the alleged causes exclusive one of the other, without regard to the causal relationship of a combination of negligence on the part of either Studt and Rummel, and the defective throttle, would have been a usurpation of the jury function to decide the facts. It is obvious from the evidence the jury could have found that negligence on the part of Rummel or Studt (or both), in the operation of their automobiles, concurred in or combined with the defect in the throttle of Rummel's automobile, and each was an efficient cause without which the accident or damages would not have occurred. Thus, to have failed to charge on joint and concurrent causes would, in our view, have been error.

We are satisfied the additional defendants have failed to show error in the charge or rulings of the trial judge which would warrant a grant of judgment notwithstanding the verdicts or a new trial.

## ORDER

Now, April 6, 1973, upon consideration of the record and briefs, the motions of Bingler Ford Sales and Ford Motor Company for judgments notwithstanding the verdicts or a new trial are dismissed.

The prothonotary is directed to enter judgments on the verdicts upon payment of the usual fees.