Ralph B. GIBERSON and Patricia Giberson, Appellants,

v.

FORD MOTOR COMPANY, Respondent.

No. 57306.

Supreme Court of Missouri, Division No. 2.

Jan. 14, 1974.

Donald E. Bonacker, Springfield, for plaintiffs-appellants.

Daniel, Clampett, Ellis, Rittershouse & Dalton, B. H. Clampett, Francis H. Mc-Clernon, Jr., Springfield, for respondent.

MORGAN, Judge.

Plaintiffs sued defendant to recover for damages allegedly suffered by them in an automobile accident on May 6, 1969, in the City of Springfield, Missouri. Liability of defendant was premised on the assertion that it had "manufactured and sold" an automobile with a "defective engine" which had exploded under "normal usage" and that such "tortious conduct" was the proximate cause of the accident in question. The trial court sustained defendant's motion to dismiss for failure to state a cause of action, and plaintiffs appealed prior to January 1, 1972. Jurisdiction is in this court by virtue of the amount in dispute. Art. 5, § 31(4), Mo.Const. 1945, V.A.M.S. We reverse and remand.

Plaintiffs alleged in their petition that defendant had sold the city a certain automobile; that on the date mentioned it was being driven by a police officer in a line of traffic wherein plaintiff (husband) was driving; that the motor in the automobile sold by defendant exploded; that said explosion created a dense cloud of steam, smoke and gas which restricted visibility of other drivers to such an extent that a multiple automobile collision occurred.

The parties agree as to the existing law in this state reference the rule of strict liability in tort in the area of products liability, and they submit only one question, i.e., should the rule be made applicable to a by-stander who was not a purchaser or user of the defective chattel?

This court in Keener v. Dayton Electric Manufacturing Company, 445 S.W.2d 362, l. c. 364 (Mo.1969) declared that: "The law involving products liability has undergone dramatic change in recent years. See Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn. Law Review 791; Roberts, Implied Warranties —The Privity Rule and Strict Liability— the Non-Food Cases, 27 Mo. Law Review 194. In Morrow v. Caloric Appliance Corporation, Mo.Sup., 372 S.W.2d 41, this Court en Banc held that privity of contract was not necessary in order for the purchasers of a gas range to recover on implied warranty for fire damage against the manufacturer. See also Williams v. Ford Motor Company, Mo.App., 411 S.W.2d 443. We now adopt the rule of strict liability in tort stated in 2 Restatement, Law of Torts, Second, § 402A, as follows:

'(1) One who sells any product in a defective condition reasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.'

We adopt this rule of strict liability in tort for at least three reasons:

(1) '* * * The purpose of such liability is to insure that the costs of inju-

ries resulting from defective products are borne by the manufacturers [and sellers] that put such products on the market rather than by the injured persons who are powerless to protect themselves.' Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 901, 13 A.L.R.2d 1049.

(2) ' * * * The main advantage to Missouri courts in fully adopting the *Restatement* theory could be release from the shackles of warranty language. Whether the words "strict liability" or "implied warranty" or both combined are used, the difference in Missouri would not be one of substance since our courts are clearly recognizing the tort nature of the liability imposed. However, using the language of the *Restatement* would avoid innumerable vexing problems that have arisen in other jurisdictions where the device of warranty is used to impose strict liability.' Krauskopf, Products Liability, 32 Mo.L.Rev. 459, 469.

(3) It is essential now that the Bench and Bar of Missouri be given some sense of direction in products liability cases."

Later, and somewhat in retrospect, this court in Katz v. Slade [City of Kansas City], 460 S.W.2d 608, 1. c. 611 (Mo.1970), looked again at " . . . the basic policy reasons underlying the decisions in this State abrogating the requirement of privity of contract in implied warranty cases and imposing strict liability in tort in cases in which that element is absent. Various reasons have been assigned: to reshape the law to conform to the requirements of modern life in the interest of social justice; to modify the harsh results flowing from the rule of *caveat emptor*; to afford justice to the majority of the consumer citizenry whose well-being, health and lives are dependent in great degree upon processed food and manufactured articles, the fitness or safety of which the ordinary consumer knows little other than that the processor or manufacturer holds them out to the public as fit and safe for use; that by so placing their products on the market under modern conditions of retail merchandising, with the use of widespread advertising, manufacturers and suppliers are encouraging purchase of their products and representing to the consuming public that their products are suitable and safe for use; that the burden of losses consequent upon the use of defective articles should be borne by those who can control the danger or make equitable distribution of the losses; that such losses should be borne by manufacturers and sellers marketing the products of industry rather than by injured persons powerless to protect themselves."

In connection with the Katz case just noted, it should be pointed out that plaintiff therein was also a bystander. However, whether or not plaintiff as such could recover under the rule was not considered or resolved after it had been determined that liability under the rule should not be imposed on defendant city, a lessor, for the "non-commercial" rental of a defective golf cart on a municipal course.

In a case factually comparable to that here, the Supreme Court of California in Elmore v. American Motors Corporation, 70 Cal.2d 578, 75 Cal.Rptr. 652, 1. c. 656, 451 P.2d 84, 1. c. 88 (1969), first noted, that: "The authors of the restatement have refrained from expressing a view as to whether the doctrine of strict liability of the manufacturer and retailer for defects is applicable to third parties who are bystanders and who are not purchasers or users of the defective chattel. (Rest. 2d Torts, § 402A, com. o.)," and thereafter concluded, 75 Cal.Rptr. at 1. c. 657, 451 P.2d at 1. c. 89, that: "If anything, bystanders should be entitled to greater protection than the consumer or user where injury to bystanders from the defect is reasonably foreseeable. Consumers and users, at least, have the opportunity to inspect for defects and to limit their purchases to articles manufactured by reputable manufacturers and sold by reputable retailers,

whereas the bystander ordinarily has no such opportunities. In short, the bystander is in greater need of protection from defective products which are dangerous, and if any distinction should be made between bystanders and users, it should be made, contrary to the position of defendants, to extend greater liability in favor of the bystanders.

■ An automobile with a defectively connected drive shaft constitutes a substantial hazard on the highway not only to the driver and passenger of the car but also to pedestrians and other drivers. The public policy which protects the driver and passenger of the car should also protect the bystander, and where a driver or passenger of another car is injured due to defects in the manufacture of an automobile and without any fault of their own, they may recover from the manufacturer of the defective automobile."

The Court of Appeals of Arizona in Caruth v. Mariani, 11 Ariz.App. 188, 463 P.2d 83 1. c. 85 (1970), extended the rule to include a "bystander" and commented, that: "All states which have adopted the theory of strict tort liability have extended the theory to the bystander when called upon to do so. Elmore v. American Motors Corp., 70 Cal.2d 578, 75 Cal.Rptr. 652, 451 P.2d 84 (1969); Mitchell v. Miller, 26 Conn.Supp. 142, 214 A.2d 694 (1965); Piercefield v. Remington Arms Co., 375 Mich. 85, 113 N.W.2d 129 (1965); Darryl v. Ford Motor Co., 440 S.W.2d 630 (Tex. 1969); and Sills v. Massey-Ferguson, Inc., D.C., 296 F.Supp. 776 (1969), interpreting the law of Indiana and see also Klimas v. International Telephone & Telegraph Corp., D.C., 297 F.Supp. 937 (1969), interpreting the law of West Virginia wherein the 'consumer-user' limitation of Restatement (Second) of Torts § 402A was eliminated to await 'development with respect to the extent of liability to non-user, non-consumer injured persons.'" The Caruth case was cited with approval by the Supreme Court of Arizona in Tucson Industries, Incorporated v. Schwartz, 108 Ariz. 464, 501 P.2d 936, 939–940 (1972), wherein the court also delineated the basic reason for the rule itself, to-wit: "Strict liability is a public policy device to spread the risk from one to whom a defective product may be a catastrophe, to those who marketed the product, profit from its sale, and have the know-how to remove its defects before placing it in the chain of distribution." See also: O. S. Stapley Company v. Miller, 103 Ariz. 556, 447 P.2d 248 (banc, 1968).

More recently, the Supreme Court of Wisconsin brought the bystander within the protection of the rule in Howes v. Hansen, 56 Wis.2d 247, 201 N.W.2d 825, 1. c. 831 (1972), and observed, that: "To date there have been roughly 10 jurisdictions which have adopted the extension of strict tort liability to bystanders who are innocently injured. The prevailing reason for the extension has been the feeling that there is no essential difference between the injured user or consumer and the injured bystander. The reasons for the initial adoption of strict liability are uniformly felt to apply equally to the bystander. Some have gone much further by suggesting that because of his inability to 'kick the tires' the bystander is in need of more protection than the user or consumer."

Other cases of immediate interest include: Hacker v. Rector, 250 F.Supp. 300 (W.D.Mo.1966); Piercefield v. Remington Arms Co., 375 Mich. 85, 133 N.W.2d 129 (1965); Lamendola v. Mizell, 115 N.J.Super. 514, 280 A.2d 241 (1971); Mitchell v. Miller, 26 Conn.Sup. 142, 214 A.2d 694 (1965); Darryl v. Ford Motor Company, 440 S.W.2d 630 (Tex.Sup.1969); Toombs v. Fort Pierce Gas Co., 208 So.2d 615 (Fla.Sup.1968); Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965); White v. Jeffrey-Galion, Inc., 326 F.Supp. 751 (E.D.Ill.1971); Mieher v. Brown, 3 Ill.App.3d 802, 278 N.E.2d 869 (1972); Passwaters v. General Motors

**12**

Corp., 454 F.2d 1270 (8th Cir. 1972) [reference the law of Iowa]; Sills v. Massey-Ferguson, Inc., 296 F.Supp. 766 (D.C.Ind. 1969) [reference the law of Indiana]; and Wasik v. Borg and Ford Motor Company, 423 F.2d 44 (2d Cir. 1970) [reference the law of Vermont].

See also Krauskopf, Products Liability, Part II, 33 Mo.L.Rev. 24, 30; Noel, Defective Products: Extension of Strict Liability to Bystanders, 38 Tenn.L.Rev. 1; and Schneider, Tort: Recovery By A Bystander In Strict Liability, 8 Tulsa L.Jour. 216.

From all of the authorities noted it is apparent that regardless of the different legal theories upon which different courts have extended protection to the bystander, the same underlying philosophy dictated the result in each, i. e., that one controlling the making and inspection of a product should be held responsible for damage caused by defects in that product. The logic of placing the burden on the one with the best opportunity of avoiding the distribution of a defective product cannot be questioned, and we find no legitimate legal barrier to doing so. In fact, no additional burden is thereby placed on the maker of the product, for the reason that the same precautions required to protect the buyer or user would generally do the same for the bystander. Therefore, we extend any rights flowing from the "rule of strict liability in tort" adopted in Keener v. Dayton Electric Manufacturing Company, supra, to include a bystander.

Of necessity, we do mention that the trial court cannot be charged with anticipating the conclusion reached herein.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.

All of the Judges concur.