109 N.J. Super. 31 (1970)
262 A.2d 218
MARIA JASTREMSKI, GENERAL ADMINISTRATRIX AND ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF MYRON JASTREMSKI, DECEASED, JOHN JASTREMSKI, AN INFANT BY HIS GUARDIAN AD LITEM, MARIA JASTREMSKI AND MARIA JASTREMSKI, INDIVIDUALLY, PLAINTIFF-RESPONDENTS,
v.
GENERAL MOTORS CORPORATION, A CORPORATION OF THE STATE OF DELAWARE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1970.
Decided February 13, 1970.
*34 Before Judges CONFORD, COLLESTER and KOLOVSKY.
Mr. Joseph V. Cullum argued the cause for appellant (Mr. Ross L. Malone, attorney, of counsel).
*35 Mr. Stanley W. Greenfield argued the cause for respondents (Messrs. Shevick and Shevick, attorneys).
The opinion of the court was delivered by CONFORD, P.J.A.D.
Defendant General Motors Corporation appeals from a judgment in favor of plaintiffs in the aggregate sum of $149,550 for damages for personal injuries and wrongful death attributed by them to an alleged defect in the steering wheel assembly of an automobile manufactured by defendant which overturned while being driven by the decedent Myron Jastremski on the New York Thruway in the early morning of July 18, 1964. The family had left Jersey City on a vacation trip to Canada late in the evening of July 17, several hours before. Decedent's wife and son were passengers in the car and sustained relatively slight injuries. His own injuries rendered him a quadriplegic, and he died in March 1965.
The factual theory of the defense was that there was no defect in the car when it left the manufacturer's plant but that the decedent lost control of the vehicle either through excessive speed in light of the alleged condition of the roadway, weariness because of lack of sleep, or driver-error when he inadvertently took an exit ramp and then tried to steer back onto the highway.
The vehicle had been purchased new on May 8, 1964 and the odometer read 2,051 miles at the time of the accident. There was evidence that the car was in good condition prior to the accident. It had had routine servicing by the dealer the day the trip began.
Plaintiffs' case for the existence of a manufacturing defect in the vehicle rested on the testimony of one Jesse Fisher, who qualified as an expert on automobile mechanics, being a licensed teacher of automobile mechanics. After the accident he examined the steering mechanism of the vehicle where connected to the left front wheel. He found that one of the three rivets in the left front upper suspension ball stud socket was broken. He concluded the rivet had been *36 broken for some time before the accident because the broken ends were polished, indicating friction when the ends rubbed together upon road vibration. He attributed the break in the rivet to looseness in its original installation. The rivet break over a period of time caused enlargement of the socket opening, eventually causing the ball stud to slip out. When this happened the left front wheel folded under, and the rapidly moving car was wrenched from the driver's control and overturned. Defendant submitted expert testimony purporting to refute that of Fisher as to the explanation of the break in the rivet and to negate any possibility of the ball stud passing from the socket prior to the accident. Its theory was that the break in the rivet occurred as a result of the accident rather than vice versa.

I.
Defendant urges error in the court's admission, over objection, of testimony by the witness Fill, decedent's brother-in-law, of a statement allegedly made to him by decedent at the hospital 22 hours after the accident. The testimony was first taken out of the presence of the jury for a preliminary determination by the trial judge as to competency under Evidence Rule 63(32), which reads:
Subject to Rule 64, in a civil proceeding, a statement made by a person unavailable as a witness because of his death is admissible if the statement was made in good faith, upon the personal knowledge of the declarant, and there is a probability from the circumstances that the statement is trustworthy.
The testimony in question was:
A. I asked Myron [decedent] what happened.
Q. What did he say?
A. I was going to Canada and the car started to shake and it turned over.
* * * * * * * *
A. He says the wheel shook and the front end dropped down to the ground and she turned over.
*37 Plaintiff Maria Jastremski later testified to essentially the same version of the occurrence of the accident.
On the voir dire of the witness Fill defendant did not proffer any witnesses but confined its showing in opposition to the admissibility of the testimony to cross-examination of Fill and to an argument that it was unfair to allow the statement in evidence when there had been a period of eight months of survival during which the decedent's live testimony as to the happening of the accident could have been taken or perpetuated, and no such action was taken.
The court ruled in favor of the admissibility of the statement. It stated:
I have heard this testimony. I find nothing by way of what I heard or been argued to make me feel that there isn't a complete atmosphere of reliability in this case.
I'm satisfied that under this Rule, that number 1, it is admitted that the person who made the statement is now dead.  I hold, as a matter of fact, from the evidence that I have heard that it was made in good faith upon the personal knowledge of the declarant and there is a probability, a reasonable probability from the circumstances that the statement is trustworthy. I do not judge its credibility. That is for the jury to determine.
Defendant now contends for the first time that the admission of the statement is invalidated by the failure of the trial court to comply with the direction in Evidence Rule 8, dealing with preliminary inquiries, inter alia, into competency of evidence depending upon conditions, that the judge inform the parties which one has the burden of producing evidence and which the burden of proof. Defendant also complains it should have been informed by the court it could call witnesses on the conditions of competency fixed by Evidence Rule 63 (32), but it does not suggest what witnesses it would or could have called on any issue relevant to such conditions. Reiteration is also made of the objection offered at trial that plaintiff should have deposed decedent or perpetuated his testimony while he was alive. (He died before the action was instituted.)
*38 We find no merit in any of the arguments advanced. We find no prejudice in the trial court's omission to indicate on the voir dire which party had the burden of coming forward with evidence and which the burden of proof. Here the plaintiffs assumed the initial burden and met the second to the satisfaction of the judge. Defendant could properly have been assumed by the trial court to be familiar with the rules and to know that under them it was privileged to adduce evidence relative to the nonexistence of any of the conditions of competency of the decedent's statement. None having been offered, it was incumbent upon the court to rule on plaintiff's showing alone.
Evidence Rule 63 (32) is a salutary broadening of the means for determination of the truth in civil cases. See McCormick on Evidence (1954), §§ 302, 303, at 628-630; Robertson v. Hackensack Trust Co., 1 N.J. 304, 315-324 (1949) (Vanderbilt, C.J., concurring). While the breadth of the rule is such that it is susceptible of abuse if it is carelessly administered by the trial judge, we can find no fault on the record before us with the trial adjudication in this particular instance. The trial judge could well have ruled the other way, having in mind the witness Fill's obvious interest in the outcome of the case, but much necessarily depended on his peculiar capacity to appraise the demeanor of the witnesses and the flavor of the surrounding circumstances  a capacity we do not possess in the same degree. There was no error.
The admissibility of a statement under the rule does not depend upon whether the proponent party could have deposed or perpetuated the testimony of the declarant during his lifetime.

II
Two other evidence rulings are assailed by defendant. One was the court's allowance of rebuttal testimony on behalf of plaintiff by Fill to the effect that he was able with a wrench to pull a ball stud out of a socket assembly purported *39 to correspond to the one here involved. This was intended to refute a statement on cross-examination by defendant's expert Pickering, elicited over objection, that he would not be able to extract the stud with that size wrench. But later in the cross-examination he admitted it could be done. We think both the cross-examination and rebuttal were of doubtful propriety. The condition of a man pulling a stud out of a socket with a wrench does not appear comparable to the conditions attending the actual event here involved  the alleged forcing of a stud out of a socket by the stress involved in the operation of the moving car and because of the broken condition of the rivet. The conditions and circumstances not having been similar, the pertinence of both the cross-examination and rebuttal were questionable, particularly the latter, since the witness did ultimately admit the ball stud could be pulled from the model assembly with the wrench. However, we fail to discern such prejudice to defendant in the entire episode as would warrant reversal.
We find no merit in defendant's objection to the showing of the film of the decedent in the hospital. This matter lay well within the trial court's discretion.

III
Failure of the trial court to instruct the jury that it should deny recovery if it found that plaintiff's contributory negligence caused or contributed to the accident is submitted as a ground of appeal. The trial court assigned an incorrect reason for denying the requested charge when it stated that if the alleged defect was a cause concurring with decedent's excessive driving speed to produce the accident, defendant would still be liable. This is not a correct statement of the law. Maiorino v. Weco Products Co., 45 N.J. 570, 574 (1965).
However, we conclude the resulting denial of a charge on contributory negligence was not prejudicial error because we find nothing beyond conjecture, on the proofs as *40 a whole, to support a finding of contributory negligence by decedent causally contributive to the accident. There is no evidence concerning the actual speed at which the car was proceeding or that it exceeded the limits permitted for New York Thruway travel. Contrary to defendant's assertion, the proofs do not indicate any constructional defects in the roadway pertinent to safe speed at the point of the accident. There was merely new paving of the roadway. Finally, the fact that the car came to rest alongside an exit ramp does not support, in reasonable probability, defendant's tendered hypothesis that decedent had taken the exit ramp by mistake and negligently sought to turn back to the highway, resulting in the overturning of the vehicle. The location at which the car came to rest could well be consistent with the theory of the erratic tumbling of the car because of operational aberration (due to the defect) which began on the roadway proper before the vehicle arrived at the point of divergence of the exit ramp from the roadway.
Defendant cites Vespe v. DiMarco, 43 N.J. 430 (1964), on this point. We find it not pertinent. That case held that res ipsa loquitur applied to the situation of a car skidding on snow and ice. In the present case, where there is the competing explanatory hypothesis of manufacturing defect, supported by evidence, one cannot say from all the circumstances that the accident in common experience bespeaks negligence by plaintiff.
Certain other objections are posed with respect to the court's charge to the jury, but we find no ground for disturbance of the judgment in any such reason.

IV
Defendant urges that plaintiff's proofs lack the probative force to create a jury issue on the contentions that there was a defect in the steering mechanism when the vehicle left its factory and that any such defect was causally contributive to the accident. It consequently contends there was *41 error in denying its motions for involuntary dismissal or at least in failing to grant the motion for a new trial. We have carefully perused the record and, without here detailing all the proofs, are satisfied that the issues of liability were properly submitted to the jury and the motion for a new trial correctly denied.
Judgment affirmed.