228 N.J. Super. 597 (1988)
550 A.2d 757
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM K. NEMESH, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 27, 1988.
Decided October 31, 1988.
*601 Before Judges PRESSLER, O'BRIEN and SCALERA.
Frank T. Luciano argued the cause for appellant.
Terri Del Greco, Assistant Prosecutor, argued the cause for respondent (Larry J. McClure, Bergen County Prosecutor, attorney; Susan W. Sciacca, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Defendant appeals from his convictions of operating a motor vehicle while under the influence of intoxicating liquor (DWI) (N.J.S.A. 39:4-50(a)(3)), and operating a motor vehicle during a period when his New Jersey license was suspended (N.J.S.A. 39:3-40). On the DWI conviction, he was sentenced as a third offender to perform 90 days of community service and to serve 90 days in the county jail or in an in-patient rehabilitation program, fined $1,000, received a $100 surcharge, ordered to pay a $40 fee to the Alcohol Rehabilitation and Enforcement Fund, and his license was suspended for ten years. For driving while his New Jersey license was suspended, he was sentenced to serve 45 days in the county jail[1] *602 concurrent with that imposed for the DWI offense, was fined $500, and his license was suspended for one year consecutive to the suspension for the DWI conviction. We affirm.
At approximately 7:00 p.m. on May 16, 1986, a car driven by defendant collided with a car driven by Lynford Nehil. As a result, both Mr. Nehil and his passenger suffered injury and were removed by ambulance. Defendant had come from a nearby restaurant. He testified that he had arrived at the restaurant at about 5:30 p.m. and had had a leisurely beer. When his table for dinner was ready, he had had a vodka and tonic. At approximately 6:50 p.m., after consuming his meal, he had a second vodka and tonic which he drank hurriedly before leaving the restaurant. Both drinks contained approximately two and one-half ounces of vodka.
Defendant was driving his cousin's automobile. When he came under a railroad overpass and made a right turn, he *603 claimed the steering wheel had first tightened and then suddenly loosened, causing him to swerve out of control and hit the Nehil car. Defendant testified that his car had about $3,200 worth of damage and the Nehil car $7,000 worth.
When the officer arrived at the scene of the accident at about 7:10 p.m., defendant acknowledged he was the driver of one of the cars. He produced a valid Maryland driver's license in his name and the registration and insurance card for the vehicle. After attending to the injured persons, the officer spoke to defendant and noticed an odor of alcohol on his breath. The officer testified that defendant was swaying slightly, although he was calm, cooperative, and gave him no problem. He said defendant looked tired and his eyes were bloodshot.
Defendant was arrested and taken to police headquarters where Miranda[2] rights were given to him. Thereafter, the officer asked defendant where he was staying in New Jersey. Defendant responded that he was staying with his daughter in Wood-Ridge. The officer then ran a computer check on defendant and obtained driver's abstracts from New Jersey and Maryland and learned that defendant's driving privileges were suspended in New Jersey. In his police report the officer wrote that defendant's speech was slightly slurred, he was staggering slightly, and showed slight fumbling of his hands.
Defendant was brought downstairs in police headquarters where breathalyzer and coordination tests were administered to him in front of a video camera operated by another officer. We have viewed that tape.[3] While performing the *604 heel-to-toe straight-line walk, defendant twice lost his balance and had to reach for the wall (the Law Division judge observed that this occurred on three occasions). Defendant's speech sounded slightly slurred. In an attempt to explain his uncoordinated movement, defendant testified that the big toe on his left foot had been damaged in a lawnmower accident and, as a result, it swelled affecting his balance. He displayed his foot to the municipal court judge who concluded he would give defendant the benefit of the doubt as to the effect of that injury on his balance and his ability to perform the heel-to-toe walking test.
After an extensive trial covering four days beginning on December 22, 1986 and ending March 23, 1987, the municipal court judge found defendant guilty of both offenses. The judge decided to place very little weight on the breathalyzer evidence and recognized that exclusion of that evidence made the case "very close and very difficult" and concluded:

*605 I do find that the Defendant's credibility suffered. I find that the swaying along side of the accident, which I find to be  which I reject the mechanical failure explanation. I find that there obviously was some drinking. That's not really an issue here. There was some drinking.
I do find that the appearance of the Defendant on the videotape  even beyond and not paying any attention to one aspect but the other aspects of the tape  that his manner and demeanor came across to me as to someone who had been drinking and drinking to the part  and drinking to the, to the level where his ability to operate a motor vehicle was effected [sic]. And I will, therefore, find the Defendant guilty of the charge of driving while under the influence, 39:4-50.
After a trial de novo on the record, the Law Division judge again found defendant guilty of both offenses. Obedient to our recommendation in State v. Sisti, 209 N.J. Super. 148, 151 (App.Div. 1986), the Law Division judge made findings of fact both with and without the breathalyzer readings and concluded that, aside from any breathalyzer tests, the State had proven that defendant was under the influence at the time he operated his vehicle. The judge said:
The loss of balance that I saw in the videotape, even though it was an hour and a half later, exhibited the same or shows the same loss of faculties that he had at seven o'clock when he let his car go over the wrong side of the road and hit the oncoming car.
Thus, both the municipal court judge and the Law Division judge found defendant guilty of drunken driving without reference to the results of the breathalyzer test.
As a result of a remand by us to the Law Division for reconsideration because of possible perjured testimony by a state trooper respecting his educational background, the State withdrew all evidence of the breathalyzer test. At a remand hearing on January 14, 1988, the Law Division judge recognized that the testimony of the trooper was only relevant to the breathalyzer. Not only the testimony of the trooper but of all of the witnesses on that issue was withdrawn by the State. The judge noted he had found defendant guilty without considering the breathalyzer evidence. He denied defendant's motion to vacate the judgment. We affirm that disposition.
*606 The trooper had been offered as an expert to testify that the breathalyzer was working properly and to rebut testimony by defendant's doctor that defendant's bronchial condition would cause an incorrect breathalyzer reading. The allegedly false testimony by the trooper as to his academic credentials was totally unrelated to any of the other testimony in the case. As noted, the municipal court judge initially found both the doctor and the trooper to be credible and placed very little weight on the breathalyzer evidence. The State has since withdrawn all evidence relating to the breathalyzer, and we review the case solely on the evidence apart from that relating to the breathalyzer. While we certainly do not condone presentation of false testimony by the State, particularly by a state trooper, we fail to see how defendant has now been in any way prejudiced. If defendant had been in a position to demonstrate the falsity of the trooper's credentials at his initial trial, the result would probably have been limited to striking that testimony. With the State's concession, all evidence on the breathalyzer has been withdrawn, not just the testimony of the trooper.
Defendant filed a number of pretrial motions. A motion based on the alleged violation of his Miranda rights, filed on May 22, 1986, was denied by the Law Division judge on July 27, 1987. Defendant's motion seeking a jury trial was denied on December 15, 1986. Another motion by defendant to suppress evidence, which included a request for a determination that the per se aspect of N.J.S.A. 39:4-50, be declared unconstitutional is now moot. No evidence was seized and the breathalyzer evidence has been withdrawn.
We will address defendant's claim of a violation of his Miranda rights. Defendant contends his admission that he was operating the vehicle, which he made to the officer when he first arrived on the scene, was improperly admitted since Miranda warnings had not been given. We agree that the Miranda rules are applicable to motor vehicle violations if there is to be custodial interrogation. Berkemer v. McCarty, *607 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). It is obvious that an inquiry by an officer upon his arrival at the scene of an accident as to who was operating the involved vehicles is not custodial interrogation. The noncoercive aspect of ordinary traffic stops prompted the Court to hold that persons temporarily detained pursuant to such stops are not "in custody" for the purposes of Miranda. Berkemer, 468 U.S. at 441, 104 S.Ct. at 3151, 82 L.Ed.2d at 335. Except for a request to produce his credentials, defendant acknowledged he was not questioned at the scene. In any event, defendant admitted at trial that he operated the vehicle. Officer Reid testified that defendant's statement that he was staying with his daughter in Wood-Ridge was made after the Miranda warnings had been given. We see no violation of defendant's Miranda rights.
Defendant contends he was entitled to a trial by jury on the DWI charge which is provided in 44 states.[4] We rejected this same contention in State v. Linnehan, 197 N.J. Super. 41 (App.Div. 1984), and see no reason to depart from our decision in that case.
We see no reason to reconsider our decision in State v. Linnehan as requested by defendant, nor do we see any merit to his contention made at oral argument. There, he argued that the series of decisions emanating from the New Jersey Supreme Court in DWI cases convey a message to municipal court judges to be tough on drunk drivers. He asserts that this message leaves a defendant with a fact-finder preconditioned by the Supreme Court's admonitions to find guilt. To accept defendant's premise would require us to label our municipal court judges unable to act fairly and impartially in weighing *608 and evaluating the evidence and the inferences to be drawn therefrom. The fallacy of this reasoning is evident in this very case. The municipal court judge accepted the credibility of defendant's testimony that the prior injury to his foot affected his balance. Because he accepted the credibility of the experts on both sides as to the breathalyzer he placed very little weight on the breathalyzer evidence. The judge acknowledged the difficulty of his role and expressed the view, "This is the type of case that I would love to charge the jury and let them decide. I don't have that luxury." It is evident that the municipal court judge as fact-finder admirably performed his role and scrupulously analyzed and evaluated the evidence to make his findings of fact.
Defendant ignores the fact that he admitted operating the vehicle and causing the accident. Both the municipal court judge and the Law Division judge found his explanation as to the faulty steering not credible. Defendant acknowledged he had consumed five ounces of vodka and a bottle of beer within 90 minutes preceding the accident. The observations of the police officer at the scene and the coordination tests performed which were videotaped and which we have observed, reflect that this consumption of alcohol affected defendant's conduct. The statute does not require as a prerequisite to conviction that the accused be absolutely "drunk" in the sense of being sodden with alcohol. It is sufficient if the presumed offender has imbibed to the extent that his physical coordination or mental faculties are deleteriously affected. State v. Emery, 27 N.J. 348, 355 (1958).
The purpose of the statute is "to prevent the operation of motor vehicles by those whose faculties are so impaired as to present a danger to the safety of others as well as themselves." State v. DiCarlo, 67 N.J. 321, 325 (1975). The defendant offers no support for his contention that the statute is unconstitutional other than the lack of a jury trial and ipse dixit. There is no *609 merit to defendant's contention that the evidence was inadequate to support his conviction.
The notice of suspension from the Division of Motor Vehicles dated August 2, 1985 and a photocopy of a certificate of mailing dated August 6, 1985 were introduced into evidence. As the Law Division judge noted, the driving abstract, which was part of the package initially offered into evidence by the prosecutor, was withdrawn because of the obvious prejudice to defendant by revealing his prior convictions of drunken driving. While it is true that the evidence showed defendant had a valid Maryland driver's license, there is nothing to support his speculation that the notice of August 2, 1985 had been resolved and he simply had not bothered to obtain another New Jersey license. On the contrary, defendant testified on direct examination: "I was scared that I was driving without a driver's license...."
Defendant's driving privileges in this state had been suspended. His possession of a valid Maryland driver's license did not authorize him to operate a motor vehicle in this state, particularly where he was working full time in this state and residing with his daughter. We agree with the trial judge that the Maryland license seems to have been obtained and used by defendant to divert the attention of police officers in the event he was stopped and to avoid their learning that his New Jersey driving privileges had been suspended. As noted by the municipal court judge, except for the diligence of the arresting officer, he might have been successful.
While defendant's counsel has been innovative, thorough and diligent in his defense in this case and on this appeal, we find no merit to the various arguments which have been advanced. Accepting the credibility of defendant's testimony, we add that it is difficult to understand how someone twice convicted of drunken driving and whose license has been suspended could get behind the wheel of an automobile after admittedly consuming five ounces of vodka and a beer. Clearly, defendant was *610 properly convicted of both offenses and the sentences imposed were fully warranted.
AFFIRMED.
NOTES
[1] The municipal court judge had imposed a jail term of 21 days for this offense. After conviction on a trial de novo on appeal, the Law Division judge determined that sentence to be illegal and imposed a 45-day jail term. There is no merit to either of defendant's contentions concerning the increase in his sentence. An illegal sentence is correctable at any time. State v. Sheppard, 125 N.J. Super. 332, 336 (App.Div. 1973). Where the municipal court has imposed an illegal sentence, the Law Division may impose an increased sentence in conformity to a minimum required by statute. See State v. Pomo, 95 N.J. 13, 17 (1983), citing State v. McCourt, 131 N.J. Super. 283, 288 (App.Div. 1974). Defendant's contention that the last paragraph of N.J.S.A. 39:3-40 supersedes the mandatory minimum term of imprisonment of 45 days where there has been an accident resulting in personal injury to another person was recently rejected by us in State v. Wrotny, 221 N.J. Super. 226 (App.Div. 1987), where we said at p. 229:

We do not presume to ascribe any precise meaning to the word `notwithstanding' in every legal context. But in this circumstance we conclude that the Legislature intended a supplementary, permissive penalty beyond the mandatory 45 days required by subsection (e) and up to a 90-day term in the county jail, but no more than 90 days in all. To perceive a legislative intent that a person under the disability of a prior DWI conviction is exposed to a possible jail term up to 90 days but only in the judge's discretion, while a person not under this prior disability is exposed to a mandatory 45-day jail term would be a peculiar resolution indeed. Rather than reach an absurd, illogical result we read the language in the statute `notwithstanding paragraphs a. through e.' to mean simply `without prevention or obstruction from or by' or `in spite of.'
We see no reason in this case to deviate from that conclusion.
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] There is no merit to defendant's contention that the videotape was not properly authenticated for admission into evidence. As noted by Judge Bachman in State v. Bottomly, 208 N.J. Super. 82, 86 (Law Div. 1984), aff'd 209 N.J. Super. 23 (App.Div. 1986):

The videotape is merely a mechanical reproduction of the observations made by the individuals who witnessed the actions of defendant at the time of the videotaping and are unquestionably admissible under Evid.R. 1(13) when properly authenticated. See Evid.R. 67.
McCormick states that a videotape should be evaluated for admissibility just as a motion picture and a similar foundation must be laid. McCormick on Evidence § 214 (3d ed. 1984). In New Jersey, in order to authenticate a film, a litigant must offer evidence as to the circumstances surrounding its taking, the manner and circumstances surrounding the development of the film, evidence in regard to the projection of the film and testimony by a person present at the time that the pictures accurately depict the events as he saw them. Balian v. General Motors, 121 N.J. Super. 118, 125 (App.Div. 1972), certif. den. 62 N.J. 195 (1973). In this case, a police officer testified that the tape accurately and faithfully depicted the administration of the breathalyzer test and the physical tests as he saw them that evening. As to a chain of custody, the prosecutor was prepared to produce the custodian of records, but the municipal judge decided that to be unnecessary, saying:
Okay. This particular tape, which would be S-9, was clear when played back. The images and the audio were clear. I had no trouble in recognizing all the officers that were there; Officer Kristen, Officer Egbert and Officer Reed. I had no trouble identifying or looking at the person on the tape and seeing that it was, in fact, the Defendant. I had no trouble in listening to the tape when he was responding to questions.
Admission of the videotape was well within the municipal court judge's discretion. See Jastremski v. General Motors Corp., 109 N.J. Super. 31, 39 (App.Div. 1970).
[4] Defendant relies upon an Annotation, "Right to trial by jury in criminal prosecution for driving while intoxicated or similar offenses." 16 A.L.R.3d 1373 (1967). His contention has been rejected by the Fifth Circuit in Landry v. Hoepfner, 840 F.2d 1201, 1217-1219 (5th Cir.1988), which reversed a panel of that court's decision reported at 818 F.2d 1169, which is cited by defendant in his brief.