928 A.2d 157 (2006)
395 N.J. Super. 162
STATE of New Jersey, Plaintiff,
v.
Daniel HARTE, Defendant.
Superior Court of New Jersey, Law Division, Monmouth County.
Decided March 17, 2006.
*158 Byron L. Wambaugh, Assistant Prosecutor, for plaintiff (Luis Valentin, Monmouth County Prosecutor, attorney).
Robert Eisler, Deal, for defendant.
*159 NEAFSEY, J.S.C.
This matter comes before the court on defendant's motion in limine seeking preclusion of a computer generated motor vehicle recording of a police pursuit. In addition to exhibiting video and audio segments, the recording displays the following information: date, elapsed time, and the pursuit vehicle's use of the emergency lights, sirens and brakes. Additionally, the motor vehicle recording exhibits the various speeds at which the pursuit vehicle traveled. The system calculates the vehicle's speed based on the changing longitudinal and latitudinal assessments derived by a global positioning satellite.
The defendant challenges the admissibility of the video recording on various grounds. Defendant claims the recording is inaudible. Additionally, he questions the integrity of the video and alleges the recording system was not properly calibrated. The State asserts the audio transmissions between the pursuing officer and police dispatch were clear and the video recording system operated properly. Also, the State claims the changes in the longitude and latitude of the pursuit vehicle were accurately relied on to determine the vehicle's speed.
The defendant was indicted on charges which included counts of Second and Third Degree Eluding contrary to N.J.S.A. 2C:29-2b. The State sought to submit the Global Positioning System (GPS) calculations of the speeds of the pursuing officer's vehicle displayed on the video recording, in addition to the audio recording in which the officer stated the speeds he was traveling.[1]
Under N.J.S.A. 2C:29-2b,
[a]ny person, while operating a motor vehicle on any street or highway in this State, . . . who knowingly flees or attempts to elude any police or law enforcement officer after having received any signal from such officer to bring the vehicle or vessel to a full stop commits a crime of the third degree; except that, a person is guilty of a crime of the second degree if the flight or attempt to elude creates a risk of death or injury to any person. . . .
Thus, for Second Degree Eluding, in addition to finding the essential elements of the crime of eluding, the jury must also find that
[t]he flight or attempt to elude created a risk of death or injury to any person. "Injury" means physical pain, illness, or any impairment of physical condition. In order to find this element, [the jury] must determine that there was at least one person put at risk by the defendant's conduct, which could include defendant himself, any person along the chase route, any police officer in a chasing vehicle, or anyone in the eluding vehicle.
[See New Jersey Model Charge for N.J.S.A. 2C:29-2b.]
Evidence of the speeds of both the defendant's car and the pursuing officer's car is critical in this case because the statute requires the State to prove that the defendant's attempt to elude caused a risk of injury to the public, including the defendant himself or the pursuing officer. The court conducted a N.J.R.E. 104 hearing prior to trial to resolve the novel legal issues presented and determine the admissibility of the evidence.

*160 I

At the N.J.R.E. 104 hearing, the State presented two (2) witnesses, Shrewsbury Police Officer Frank Neary and the president of Mobile Vision, Lou Blanco. Mobile Vision is the manufacturer and installer of the unitary video recording computer system used by the Shrewsbury Police Department. Blanco was qualified to testify as an expert witness at the hearing. "Trial courts are expected to perform a gatekeeper role in determining whether there exists a reasonable need for an expert's testimony, and what the parameters of that testimony may be." State v. Nesbitt, 185 N.J. 504, 514, 888 A.2d 472 (2006). The court decided that the expert testimony was essential to determining the admissibility of the evidence in question. The defense did not present witnesses or evidence at the hearing.
Officer Neary testified credibly that his number one responsibility as a Shrewsbury Police Officer is maintaining and administering the Mobile Vision recording system used by the Shrewsbury Police Department. He said this has been "my number one job" since the police department began to use that system in 2003. He also testified that the system was working on the date of the incident.
According to Officer Neary's testimony, the Mobile Vision camera system operates in the following manner. The camera system is installed in the police patrol car by Mobile Vision. The Shrewsbury Police Department parking lot is equipped with a wireless receiver set up by Mobile Vision. He called the parking lot a "hot zone." At the end of a shift, a patrol car pulls into the hot zone where the wireless antenna "automatically" uploads the information recorded on the camera system during that shift to a computer in the basement of the Shrewsbury Police Department headquarters. This computer uses Mobile Vision software to manage the uploaded video files. Officer Neary specifically noted that there is no interaction between the officer and the system other than driving the vehicle into the hot zone.
He testified that once the recording is uploaded to the computer inside headquarters, the recording can be viewed on the computer and/or burned onto a DVD.[2] He also testified that it is not possible to tamper with or doctor the motor vehicle recording before or after uploading, because any alteration would corrupt the file and render it unviewable.
Officer Neary said that Shrewsbury Police Officer Gallagher, the pursuing officer in this case, requested a copy of the motor vehicle recording from his patrol vehicle for November 2, 2004. Officer Neary testified that he "burned a copy" of that recording from the Shrewsbury police computer onto a DVD. He testified that this is "an automatic process" and that nothing can be added or subtracted from the recording in the reproduction.
A computer disk was marked as S-1 for identification and played at the N.J.R.E. 104 hearing during Officer Neary's testimony. Officer Neary said that S-1 was the original DVD of the motor vehicle recording from Officer Gallagher's vehicle on November 2, 2004. He testified that he "recognized it right away by the date and time that appeared on the first frame." He identified the exhibit's global positioning data, which included longitudinal and latitudinal assessments. He said the pursuit vehicle's speed was computed from these assessments and noted how it was *161 continuously updated as the vehicle moved. He also pointed to the part of the exhibit which displayed external triggers as they were activated; i.e. emergency lights, sirens and brakes. The video recording showed the pursuing officer activating the vehicle's emergency lights or sirens, or applying its brakes, which simultaneously triggered a red light on the exhibit. After viewing S-1 in its entirety, Officer Neary said nothing had been altered or tampered with in producing the recording.
On cross-examination, Officer Neary indicated that he had no certification for the Mobile Vision system, but had been trained by Blanco on how to use the equipment. He testified that he did not know the accuracy of the GPS, but he had never seen a mistake in speed calculation when comparing what an officer said in the audio portion of the recording to what appears on a recording's GPS data display.
Mobile Vision was founded in 1986 by its President, Blanco. Mr. Blanco was qualified to testify as an expert witness under N.J.R.E. 702, for purposes of the N.J.R.E. 104 hearing.[3] He testified that he developed the video recording system used by the Shrewsbury Police Department, and has applied for a patent for both the in-car video technology and the computer software used to manage the video files. He described the longitude and latitude referred to in the video as being synchronized to 1/10,000th of a degree, and that the calculations are, therefore, accurate within fifty feet of a moving vehicle. He said that the GPS is based on a system of satellites circling the earth, and that the speed of the receiver (or patrol car) is recorded by the GPS system based on the changes in the longitude and latitude of the receiver. He also testified that logarithms convert the changing locations of the receiver into speed, miles per hour, which is displayed on the video recording.
Blanco testified that no individual handles the data because of "the automatic transfer" of the files via the wireless transmitter. He said that the uploaded files are verified. He described the system as operating in the following manner: "fully automatic, initiated automatically, no other human interaction in the process." Significantly, he testified that none of the information which is recorded can be tampered with because of the system's "secured lock." He also said it is impossible to alter the original recording because if there was any alteration, the recording could not be reproduced.
On cross-examination, Blanco said that the system automatically uploads the entire motor vehicle recording. He indicated that if there are 1,000 bits in the video, 1,000 bits will be automatically uploaded onto the computer. Additionally, he corroborated Officer Neary's testimony that training sessions on how to operate the Mobile Vision System were given to officers at the Shrewsbury Police Department. Finally, he said he viewed S-1 for identification in its entirety in the courtroom immediately prior to the hearing, and observed no indicia of tampering or alteration.

II
In order to determine the admissibility of the video recording, the authenticity of the recording pursuant to N.J.R.E. 1001(c) is considered. Next, the quality of the contents of the exhibit is examined under *162 the factors set out in State v. Driver, 38 N.J. 255, 183 A.2d 655 (1962). Finally, the video recording is analyzed as a demonstrative aid for the jury, and its probative value is weighed. After examining each step of this analysis, the court finds the video recording is admissible at trial. The State will be required to present the testimony of the pursuing officer, Officer Gallagher, at trial, to corroborate that the video recording is a true and accurate depiction of his pursuit of defendant, and to identify the speakers on the audio portion of the recording.
S-1 for identification is an original under N.J.R.E. 1001(c). An original under N.J.R.E. 1001(c) is defined as:
[T]he writing [which includes recordings under R. 801(e)] itself or any counterpart intended by the person or persons executing or issuing it to have the same effect. An "original" of a photograph includes the negative or any print therefrom. If data are stored by means of a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an "original."
The testimony of Officer Neary and Blanco provides a reasonable basis to conclude that S-1 for identification is genuine. Neary testified that nothing was tampered with. Blanco testified that the recorded information cannot be tampered with in any way because of the system's secured lock. He said that file transfers are fully automatic, without any human intervention. He also said the system verifies the upload from the pursuing vehicle to insure its accuracy. Furthermore, each DVD is an original under N.J.R.E. 1001(c), because it gets the information directly from the computer. Based on this evidence, the State has satisfied the requirements of authentication under N.J.R.E. 901.[4]
The considerations set forth by the Supreme Court in State v. Driver, 38 N.J. 255, 183 A.2d 655 (1962), are applicable. In Driver, the defendant was convicted of murder in the first degree arising out of a robbery. As part of its evidence, the State introduced the audio taped confession of the defendant. The audiotape in Driver, the Court held, should have been excluded because it was unintelligible and inaudible. State v. Driver, supra, 38 N.J. at 288, 183 A.2d 655. Driver recognized the importance of sound recordings and noted that
[a] wire recorder which catches the actual voice of an accused and of his questioner, may be an invaluable aid to a court and jury where the issue of voluntariness of a confession is raised (citation omitted). In fact, the recording may be more satisfactory and persuasive evidence than the written and signed document.
[Id. at 287, 183 A.2d 655.]
The Supreme Court set out five conditions governing the admissibility of a sound recording.
[T]he speakers should be identified and it should be shown that (1) the device was capable of taking the conversation or statement, (2) its operator was competent, (3) the recording is authentic and correct, (4) no changes, additions or deletions have been made, and (5) in instances of alleged confessions, that the statements were elicited voluntarily and without any inducement.
[Id. at 287, 183 A.2d 655.]
The evidence at the hearing establishes that on November 2, 2004, the motor vehicle *163 recording system in Officer Gallagher's vehicle was capable of recording audio statements in a clear and audible manner, that it was working and operated competently, and that no changes, additions or deletions had been made to the video recording. Officer Neary testified that if the video recording had been altered or tampered with in any way, the file would be corrupted and, therefore, unreadable. That is, the video recording could not be reproduced. Both witnesses watched S-1 and saw nothing indicative of tampering or alteration. Also, there is no possibility of human error infecting the recording because the system does everything automatically. Finally, the exhibit was played in its entirety in court. Based on all of this evidence, it is clear that no tampering or alteration took place.
Additionally, viewing and hearing S-1 for identification showed that the exhibit is audible. The discussion between pursuing Officer Gallagher and police dispatch is comprehensible and understandable.
Also, viewing and listening to S-1 for identification established that the system was working properly. Whenever the pursuing officer advised dispatch over his radio of his speed, it matched the speed displayed on the video recording. Significantly, for example, when the pursuing officer said he was traveling over 100 mph, the GPS data on the exhibit indicated the speed of the vehicle to be 102 mph. Moreover, the expert witness described how the pursuing vehicle's speed is calculated based on changes in the longitude and latitude of the receiver, which is in the patrol vehicle. This evidence establishes appropriate calibration.[5] The audio and video portions of S-1 establish that the external triggersemergency lights, sirens, brakeswere synchronized with the red light indicator for those external triggers, as the red lights were displayed on the recording at the appropriate times during the entire pursuit. For all of these reasons, it is clear that the system was working properly on November 2, 2004.
Furthermore, since the DVD was created directly from the computer, the DVD is actually the original recording and authentic depiction of what happened. Thus, the Driver factors are satisfied by the testimony produced at the hearing.[6] The only voices on the recording were the voices of the pursuing officer and dispatch. The State will produce Officer Gallagher, the pursuing officer, at trial to identify the voices and to testify that S-1 fairly and accurately depicts the pursuit of defendant on November 2, 2004.

III
The presentation of the video will assist the trier of fact in understanding and evaluating all of the evidence. The "mere possibility that evidence could be prejudicial does not justify its exclusion." State v. Morton, 155 N.J. 383, 453-54, 715 A.2d 228 (1998). Damaging evidence is generally prejudicial; however the inquiry is not simply whether the evidence is prejudicial, *164 but rather whether the risk of prejudice is too high that it outweighs the probative value of the evidence. State v. Swint, 328 N.J.Super. 236, 253, 745 A.2d 570 (App.Div.2000), certif. den. 165 N.J. 492, 758 A.2d 651 (2000). It is the burden of the party seeking to preclude the admission of evidence pursuant to N.J.R.E. 403 to convince the trial judge that the factors favoring exclusion substantially outweigh the probative value of the contested evidence. Morton, supra, 155 N.J. at 453, 715 A.2d 228 (citing State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982)). Under N.J.R.E. 403, "relevant evidence may be excluded if its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403.
The highly relevant and probative value of this video recording is not outweighed by any prejudice to the defendant. The audio statements regarding the speed of the pursuing vehicle and the speed displayed on the recording are critical pieces of evidence for the jury to consider because the defendant is charged with second degree eluding, which requires the State to prove that he was engaged in conduct that would pose a threat of harm to himself, the pursuing officer or some other member of the public. See N.J.S.A. 2C:29-2b. The countervailing factors regarding trial integrity or efficiency issues do not exist. The balance in this case clearly weighs in favor of admitting this critical and highly probative evidence. Therefore, S-1 is not inadmissible under N.J.R.E. 403.
As modern technology, such as the video recording system used in this case, improves, courts and jurors should receive the benefit of more information. Video recording S-1, like the video in State v. Nemesh, 228 N.J.Super. 597, 550 A.2d 757 (App.Div.1988), is a video of the actual event as it happened. The Court in Nemesh, held that the video tape was admissible and that it was "merely a mechanical reproduction of the observations made by the individuals who witnessed the actions of defendant at the time of the videotaping and was unquestionably admissible." Nemesh, supra, 228 N.J.Super. at 604 n. 3, 550 A.2d 757. (citing State v. Bottomly, 208 N.J.Super. 82, 86, 504 A.2d 1223 (Law Div.1984), aff'd, 209 N.J.Super. 23, 506 A.2d 1237 (App.Div.1986), which noted "the videotape is merely a mechanical reproduction of the observations made by the individuals who witnessed the actions of defendant at the time of the videotaping and is unquestionably admissible under Evid.R. 1(13) when properly authenticated. See Evid.R. 67.")
Aristotle said "we are most fully persuaded when we consider a thing to have been demonstrated." Aristotle, Rhetoric, bk. I, ch. 1. S-1 will allow the trier of fact to see what Officer Gallagher was seeing as it was happening. It will provide the jury with the event in real time. Demonstrative evidence is a valuable tool used by prosecutors and defense trial attorneys alike to assist jurors.
The New Jersey Supreme Court, in State v. Cook, 179 N.J. 533, 847 A.2d 530 (2004), recognized and highlighted the benefits to both judges and juries of video recording interrogations and confessions.
A recording would "enhance a judge or juror's assessment of credibility by providing a more complete picture of what occurred" (citation omitted). Because "[e]ven the most scrupulous of witnesses is subject to forgetfulness," a recording of an interrogation would also provide judges and juries with a more accurate picture of what was said, as words can convey different meanings depending on *165 the tone of voice or nuance used. (citation omitted)
[State v. Cook, supra, 179 N.J. at 556, 847 A.2d 530.]
In short, evidence of this nature can be more accurate, complete, objective, credible and persuasive then witness testimony alone. Viewed in this light, S-1 is an invaluable tool for the jury to consider in deciding the truth in this case.

IV
The video recording is authentic, though the State must fulfill its offer of proof when the matter is presented to the jury. It also meets the requirements of State v. Driver, supra. The video recording is highly relevant to material issues in dispute and is not subject to exclusion under N.J.R.E. 403. S-1 will assist the trier of fact in better understanding the evidence regarding this incident. Defendant's Motion in Limine is hereby denied.[7]
NOTES
[1] Global Positioning System technology is defined as "[a] system of satellites, computers, and receivers that is able to determine the latitude and longitude of a receiver on Earth by calculating the time difference for signals from different satellites to reach the receiver." The American Heritage Dictionary of the English Language (4th ed. 2000).
[2] A DVD, or Digital Videodisc, is a "highdensity compact disk for storing large amounts of data, especially high-resolution audio-visual material." The American Heritage Dictionary of the English Language (4th ed. 2000).
[3] Blanco testified that he received a bachelor of science and industrial arts and that he spent seven and one-half years installing and working on the recording cameras in the Lincoln and Holland Tunnels. Also as a co-inventor, he received a patent for the management and storage of video records.
[4] N.J.R.E. 901 states "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter is what its proponent claims."
[5] Generally, "the results of scientific tests are admissible at a criminal trial only when they are shown to have `sufficient scientific basis to produce uniform and reasonably reliable results and will contribute materially to the ascertainment of the truth.'" Romano v. Kimmelman, 96 N.J. 66, 80, 474 A.2d 1 (1984) (citing State v. Cary, 49 N.J. 343, 352, 230 A.2d 384 (1967)). In Romano, the Court required the State to show that the breathalyzer machine was properly calibrated in order for the results to be admissible at trial. Romano, supra, 96 N.J. 66, 474 A.2d 1.
[6] The fifth factor in the Driver analysis is irrelevant to the case at hand as it applies to confessions and S-1 was not a video recording of a confession. State v. Driver, supra, 38 N.J. 255, 183 A.2d 655.
[7] The principal case has since been concluded.