**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5867-17T3

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

KENNETH KEARSTAN,

     Defendant-Appellant.

_____

Submitted September 9, 2019 – Decided September 20, 2019

Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Morris County, Municipal Appeal No. 18-006.

Wilentz, Goldman & Spitzer PA, attorneys for appellant (John Edmund Hogan, Jr., of counsel and on the brief).

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Cristina Jordao, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Kenneth Kearstan appeals from his conviction for driving while intoxicated, contrary to N.J.S.A. 39:4-50. He entered a conditional guilty plea in the Washington Township municipal court specifically preserving his right to appeal the denial of his motions to suppress the alleged unconstitutional entry into his home by the police and his subsequent incriminating statements made without the benefit of Miranda[1] warnings. R. 7:6-2(c). The Law Division affirmed the municipal court's suppression determinations on de novo review and this appeal followed. We affirm.

I.

The following facts elicited at the suppression hearing are substantially not in dispute. At the time of the events at issue, defendant and his wife were in the midst of divorce proceedings and had been separated for nine months. On April 18, 2017, at approximately 5:00 p.m., defendant arrived at the marital home with damage to his car, including a missing mirror. Defendant's wife called 911, and while on the phone with the operator she learned that defendant had used a key to unlock the door to the house and entered the basement. She reported that defendant had an alcohol issue and believed he was intoxicated, as he was slurring his words and "smell[ed] a little too."

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966)

A-5867-17T3

Washington Township Patrolman Michael Thompson was dispatched to the residence to conduct a welfare check. Defendant's wife met Thompson at the front door and invited him into the home. Thompson testified that prior to entering the home he too noticed the damage to defendant's vehicle. He also stated that he had previously been at the residence on an alarm call and met defendant's wife, who had shown him the security system. Thompson's testified that defendant's wife was upset when he arrived and noted that the parties' young children were present.

As soon as Thompson entered the home, defendant's wife advised him that defendant was in the basement. She believed defendant had taken medication and was intoxicated. She repeatedly stated her concern for defendant's well-being but was upset regarding defendant's presence in the home, as she had previously informed defendant that he was not permitted in the home when inebriated.

Thompson testified that he stood at the top of the stairs and called down to defendant to come up from the basement. When defendant entered the stairway he was off balance, staggering, and his pants were falling down. Thompson testified that defendant had difficulty pulling up his pants and he detected an odor of alcohol emanating from defendant. He stated it was clear

3

that defendant was "extremely intoxicated" and he needed assistance simply to stand up. Thompson told defendant he wanted to speak with him outside, away from the children.

Throughout Thompson's encounter with defendant, he expressed concern for defendant's well-being, which he described as his "top priority." He also advised defendant that his wife was worried about his drinking and prescription drug use, as well as the circumstances surrounding the damage to his car.

Thompson testified that he asked defendant to exit the home so they could speak outside in order to avoid an altercation between defendant and his wife and so defendant's children would not witness their interaction. While on the porch, Thompson began questioning defendant and observed that defendant's eyes were bloodshot and his speech was slurred. Thompson testified that he again smelled alcohol emanating from defendant.

Defendant told Thompson that he had no memory of being involved in an accident. After initially denying drinking that day, defendant eventually admitted to consuming three small airplane-sized bottles of alcohol. Defendant also admitted to engaging in an argument with his wife earlier in the week regarding paying their taxes and stated he came to the home to finish a basement construction project.

A-5867-17T3

In light of his observations and defendant's statements, Thompson attempted to administer Standard Field Sobriety Tests. After defendant stated he was unable to complete the walk-and-turn test, Thompson decided to cease administrating the remainder of the field sobriety tests out of concern that defendant's condition would cause him to fall and injure himself.

Defendant was placed under arrest for driving while intoxicated. Thompson and another officer requested that a first aid squad meet them at police headquarters, as Thompson was concerned defendant was exhibiting signs of an overdose. Defendant was subsequently transported to Hackettstown Hospital where a blood draw revealed defendant had a blood alcohol concentration (BAC) of 0.29%, well above the legal limit.

Before the municipal court, defendant moved to suppress the results of his blood alcohol test and the incriminating statements he made to Thompson claiming the police violated his Fourth and Fifth Amendment rights under the United States Constitution and corresponding rights under the New Jersey Constitution. Specifically, defendant maintained that Thompson improperly entered his home without consent and failed to administer Miranda warnings.

At the conclusion of the suppression hearing in which Thompson was the only testifying witness, the municipal court judge denied defendant's motions,

A-5867-17T3

concluding that defendant's wife knowingly and willingly invited Thompson into the family home. The judge also concluded that the warrantless entry was justified under the community-caretaker and emergency-aid doctrines. Finally, the judge determined that the subsequent questioning of defendant did not constitute a custodial interrogation warranting <u>Miranda</u> warnings. Instead, the judge characterized Thompson's questioning as similar to the preliminary, roadside investigation of an individual suspected of drunk driving.

Because this was defendant's second DWI conviction, he was assessed the appropriate mandatory fines and penalties, his driving privileges were revoked for a period of two years, and the court sentenced defendant to a forty-eight hour minimum treatment in the Intoxicated Driver's Resource Center. Defendant was also required to install an ignition interlock device on his vehicle for one year upon restoration of his driving privileges. Finally, the court stayed defendant's sentence pending appeal.[2]

Defendant appealed his conviction to the Law Division. On de novo review, the Law Division affirmed the municipal court's suppression ruling and similarly concluded the police did not violate defendant's Fourth or Fifth

---

[2] In addition, as part of defendant's conditional plea, the State dismissed summonses for leaving the scene of an accident, in violation of N.J.S.A. 39:4-129, and failure to report an accident, in violation of N.J.S.A. 39:4-130.

Amendment rights. Specifically, the court determined Thompson had a lawful right to be in the home based on valid consent obtained from defendant's wife, and appropriately questioned defendant without the need for <u>Miranda</u> warnings. The court imposed the same sentence as the municipal court, similarly stayed the sentence, but ordered that defendant abstain from using alcohol and appear periodically in court for compliance monitoring.

On appeal, defendant raises the following issues for our consideration:

POINT I

THE REMOVAL OF DEFENDANT FROM HIS HOME WAS IMPROPER AND, THEREFORE, THE EVIDENCE GATHERED THEREAFTER MUST BE SUPPRESSED.

POINT II

THE INCULPATORY STATEMENTS MADE BY MR. KEARSTAN AFTER BEING REMOVED FROM HIS HOME WERE OBTAINED IN VIOLATION OF THE PRIVILEGE AGAINST SELF-INCRIMINATION AND MUST BE SUPPRESSED.

We disagree with both of defendant's arguments. Thompson lawfully entered defendant's home as a result of the informed and voluntary consent granted to him by defendant's wife. Defendant's subsequent incriminating responses and BAC results were the consequence of a proper investigatory interrogation similar to that occurring on a roadside and to which <u>Miranda</u>

warnings are not required. Consequently, we discern no violation of defendant's federal or state constitutional rights and, accordingly, affirm.

## II.

When reviewing a trial court's decision on a motion to suppress, we defer to the factual findings of the trial court if they are supported by sufficient evidence in the record. State v. Hubbard, 222 N.J. 249, 262 (2015) (citing State v. Gamble, 218 N.J. 412, 424 (2014)). Further, our review of the Law Division order here "is limited to determining whether there is sufficient credible evidence present in the record to support the findings of the Law Division judge, not the municipal court." State v. Clarksburg Inn, 375 N.J. Super. 624, 639 (App. Div. 2005) (citing State v. Johnson, 42 N.J. 146, 161–62 (1964)). Finally, we review the Law Division's legal determinations or conclusions based upon the facts on a de novo basis. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

## III.

Both the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution protect against unreasonable searches and seizures performed without a warrant issued based on probable cause. U.S. Const. amend. IV; N.J. Const. art. I, § 7. A warrantless search or

seizure is presumptively invalid under both the federal and state constitutions. State v. Piniero, 181 N.J. 13, 19 (2004) (citing State v. Patino, 83 N.J. 1, 7 (1980)). Further, we have long recognized that the home is the most highly protected area against unreasonable searches and seizures. State v. Vargas, 213 N.J. 301, 312–13 (2013).

A warrantless search or seizure is nonetheless valid if it "falls within one of the few well-delineated exceptions to the warrant requirement." State v. Maryland, 167 N.J. 471, 482 (2001) (quoting State v. Citarella, 154 N.J. 272, 278 (1998)). These exceptions include consent as well as the community-caretaking and emergency-aid doctrines. See State v. Lamb, 218 N.J. 300, 315 (2014) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)) (consent exception); State v. Edmonds, 211 N.J. 117, 130–31, 41–42 (2012) (citing Cady v. Dombrowski, 413 U.S. 433, 441 (1973)) (community-caretaking and emergency-aid exceptions); Michigan v. Fisher, 558 U.S. 45, 47 (2009) (emergency-aid exception).

As noted, consent, whether express or implied, is an exception to the warrant requirement at both the federal and state level. See United States v. Matlock, 415 U.S. 164, 177 (1974); State v. Douglas, 204 N.J. Super. 265, 275–76 (App. Div. 1985); State v. Koedatich, 112 N.J. 225, 262 (1988). Any consent,

however, must be knowing and voluntary. State v. Carty, 170 N.J. 632, 639 (2002). The State bears the burden to establish that the consent was voluntary, meaning that the person providing consent was aware they "had a choice in the matter." State v. Johnson, 68 N.J. 349, 354 (1975). The person providing consent, however, need not be informed of the right to refuse entry where the entry does not include a Fourth Amendment search. See State v. Williams, __ N.J. Super. __, __ (App. Div. 2019) (slip op. at 22–23) (citing State v. Padilla, 321 N.J. Super. 96 (App. Div. 1999); State v. Piniero, 369 N.J. Super. 65, 73 (App. Div. 2004)).

A third party's consent binds a defendant if the third party has authority to provide consent. Douglas, 204 N.J. Super. at 276; see also State v. Miller, 159 N.J. Super. 552, 556–57 (App. Div. 1978). A third party may have such authority where cohabitants share use or have common authority over the space searched. Lamb, 218 N.J. at 315 (citing Matlock, 415 U.S. at 171); State v. Cushing, 226 N.J. 187, 200 (2016) (citing State v. Suazo, 133 N.J. 315, 320 (1993)). Where there is "mutual use of the property by persons generally having joint access or control . . . it is reasonable to recognize" that either cohabitant may consent to entry into the home. Matlock, 415 U.S. at 171 n.7.

Relying primarily on a series of United States Supreme Court and federal cases including Payton v. New York, 445 U.S. 573 (1980), Welsh v. Wisconsin, 466 U.S. 740 (1984), and United States v. Morgan, 743 F.2d 1158 (6th Cir. 1984), defendant argues that Thompson improperly entered his home because "absent probable cause and exigent circumstances, warrantless entries of [a] home are prohibited by the Fourth Amendment." After a thorough review of the authorities cited by defendant in the context of the record on appeal, we conclude they are factually distinguishable, as the police in those cases did not have consent to enter the defendants' homes.

For example, in Payton, the United States Supreme Court resolved two separate appeals involving officers' warrantless entries into defendants' homes. Notably, in neither case did the police obtain consent before entering or satisfy any other exception to the warrant requirement. As the Court noted:

> [I]n both cases we are dealing with entries into homes made without the consent of any occupant. In Payton, the police used crowbars to break down the door and in Riddick, although his 3 year old son answered the door, the police entered before Riddick had an opportunity either to object or to consent.
>
> [Payton, 445 U.S. at 583.]

Similarly, in Welsh, the Supreme Court held that an officer may not justify a warrantless entry into a home to arrest a suspect on the grounds that "evidence

A-5867-17T3

of the petitioner's blood-alcohol level might have dissipated while the police obtained a warrant." Welsh, 466 U.S. at 754. The Welsh Court explicitly noted that it "assume[d] that there was no valid consent to enter the petitioner's home." Id. at 743 n.1.

Finally, in Morgan, the Sixth Circuit invalidated an arrest where nine police officers surrounded the defendant's home and set up spotlights and bullhorns to coerce him outside, where he was arrested. Ibid. The court held that "the warrantless arrest of [defendant], as he stood within the door of a private home, after emerging in response to coercive police conduct, violated [defendant]'s [F]ourth [A]mendment rights." Id. at 1166.

Here, Thompson did not coerce defendant or his wife before entering the home. Rather, defendant's wife, who Thompson knew from a previous encounter, actually invited Thompson's into the home after calling 911. Consequently, the court's finding that Thompson obtained valid consent from defendant's wife, and thus did not violate defendant's Fourth Amendment rights, was fully supported by the record and did not constitute error or an abuse of discretion.[3]

---

[3] In light of our conclusion that Thompson had consent to enter defendant's home, we need not address the community-caretaking exception and the emergency-aid exceptions relied upon by the municipal court.

IV.

Defendant next argues that both the municipal and Law Division judges committed error in refusing to suppress his incriminating statements and BAC results because Thompson failed to provide Miranda warnings prior to questioning him, and thus any subsequently obtained evidence was the "fruit of the poisonous tree . . . ." Wong Sun v. United States, 371 U.S. 471, 488 (1963). Again, we disagree. Thompson was not required to administer Miranda warnings here because he merely engaged in a preliminary fact-gathering investigation akin to a routine roadside DWI traffic stop. See State v. Ebert, 377 N.J. Super. 1, 9 (App. Div. 2005); State v. Baum, 393 N.J. Super. 275, 291 (App. Div. 2007).

The Fifth Amendment of the United States Constitution guarantees all persons the privilege against self-incrimination. U.S. Const. amend. V. This privilege applies to the states through the Fourteenth Amendment. U.S. Const. amend. XIV; Griffin v. California, 380 U.S. 609, 615 (1965). Further, New Jersey recognizes a common law privilege against self-incrimination, which has been codified in statutes and rules of evidence. N.J.S.A. 2A:84A–19; N.J.R.E. 503; State v. Reed, 133 N.J. 237, 250 (1993). That privilege affords any person taken into custody or otherwise deprived of his or her freedom, to be provided certain warnings before questioning can commence. Miranda, 384 U.S. 436.

13

The requirement that an individual be provided with Miranda warnings is triggered by a "'custodial interrogation,' which is 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of . . . freedom of action in a significant way.'" State v. Smith, 374 N.J. Super. 425, 430 (App. Div. 2005) (quoting Miranda, 384 U.S. at 444). An individual is deemed to be in custody if "the action of the interrogating officers and the surrounding circumstances, fairly construed, would reasonably lead a detainee to believe he [or she] could not leave freely." State v. Coburn, 221 N.J. Super. 586, 596 (App. Div. 1987) (citing State v. Godfrey, 131 N.J. Super. 168, 176 n.1 (App. Div. 1974)). Under this objective test, courts consider the time, location, and duration of the detention, the nature of the questioning, and the conduct of the officers in evaluating the degree of restraint. See e.g., Smith, 374 N.J. Super. at 431; State v. Pierson, 223 N.J. Super. 62, 67 (App. Div. 1988).

Conversely, "Miranda is not implicated when the detention and questioning is part of an investigatory procedure rather than a custodial interrogation." Pierson, 223 N.J. Super. at 66 (citing United States v. Booth, 669 F.2d 1231, 1237 (9th Cir. 1981)). Such an investigatory procedure has included detention and questioning during a traffic stop or a field investigation. See Berkemer v. McCarty, 468 U.S. 420, 437–38 (1984) (holding that because a

14

vehicle stop is "presumptively temporary and brief" and "public, at least to some degree[,]" it does not automatically trigger the Miranda requirement); Terry v. Ohio, 392 U.S. 1, 30–31 (1968) (holding that officers may briefly detain a person to investigate circumstances that provoke reasonable suspicion).  In such circumstances, even though an individual's freedom of action is clearly restrained to a degree, Miranda warnings are only required if, under the totality of the circumstances, the detention becomes "the functional equivalent of an arrest."  Smith, 374 N.J. Super. at 431 (quoting Berkemer, 468 U.S. at 442); see also State v. Nemesh, 228 N.J. Super. 597, 606–07 (App. Div. 1988).

Our state courts have applied the Berkemer reasoning in analyzing whether Miranda warnings are required during a routine traffic stop.  In Ebert, we held that a DWI suspect, like defendant here, was not entitled to the administration of Miranda warnings prior to the officer's preliminary questioning during the fact gathering process.  Ebert, 377 N.J. Super. at 9.  Relying on Berkemer, we noted that "a police officer asking a defendant a modest number of questions and requesting the defendant to perform a field sobriety test in a public place" was not equivalent to a formal arrest and did not require the administration of Miranda warnings.  Ibid.  (citing Berkemer, 468 U.S. at 442); see also State v. Hickman, 335 N.J. Super. 623, 631 (App. Div.

15

2000) ("Roadside questioning of a motorist is not transformed into 'custodial interrogation' that must be preceded by <u>Miranda</u> warnings simply because a police officer's questioning is accusatory in nature or designed to elicit incriminating evidence.").

Thus, in the context of a field investigation, "[t]he question is whether a reasonable person, considering the objective circumstances, would understand the situation as a de facto arrest or would recognize that after brief questioning he or she would be free to leave." <u>Smith</u>, 374 N.J. Super. at 432. Here, Thompson responded to the home in response to defendant's wife's 911 call and made preliminary inquiries of defendant, who appeared visibly intoxicated shortly after operating a motor vehicle. Thompson's initial questioning of defendant was brief, occurred inside and then outside the home, and took place only after he was expressly invited into the residence by defendant's wife. Defendant was neither handcuffed nor placed under arrest during the initial investigation. Under the totality of the circumstances, we agree with the Law Division that defendant was subject only to a "brief investigative detention . . . conducted in a . . . reasonable" manner which was not the functional equivalent of an arrest, and Thompson was authorized "to conduct the interrogation in the way that he did, in the context that he did, without having to give <u>Miranda</u>

A-5867-17T3

warnings." See Berkemer, 468 U.S. at 443; Ebert, 377 N.J. Super. at 9; State v. Smith, 307 N.J. Super. 1, 9 (App. Div. 1997).

Accordingly, we conclude the court did not err in denying defendant's motion to suppress. Defendant's conviction for violating N.J.S.A. 39:4-50 is affirmed and the stay issued by the Law Division of defendant's sentence is dissolved. Defendant shall appear before the municipal court within twenty days to surrender his driver's license and arrange for implementation of his sentence. To the extent we have not addressed any of defendant's remaining arguments, we find them to be without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5867-17T3